EDWARD K. ROGERS, plaintiff in error, *v.* JOHN DICKEY, defendant in error.

*Error to Sangamon.*

Where two or more writs of *fi. fa.* are delivered at different times, either to the same or different officers, and no sale is actually made of the defendant's goods, the execution first delivered must have the priority, though the first seizure may have been made on a subsequent execution. But where the goods are actually sold by virtue of a levy made under a junior execution, the sale will be good, and the property cannot afterwards be taken from the purchaser by the senior execution. The only remedy of the party injured is against the officer.

A. owed B. certain rent, and a constable levied a distress warrant for the same on personal property found on the demised premises, on the first day of May, 1842, said rent having been due on the 18th day of March previously. At the July term of the Circuit Court, a judgment was recovered, as required by the statute in such cases, for the rent. C. on the eighth day of said March, delivered to the sheriff of the county an execution in his favor against A., for collection, and on the 26th day of said May levied the same on the property in the constable's hands, and took the same from his possession: *Held,* that the sheriff had the prior lien by virtue of the execution held by him.

In regard to judgment liens upon lands created by statute, the lien commences with the judgment, and continues as long as the statute gives it priority over other liens; and the circumstance of not proceeding upon it, until a subsequent lien has been obtained and carried into execution, has never been considered as divesting the first judgment creditor of his right to have his judgment satisfied out of the same lands if necessary. In the case of mortgages, a subsequent mortgagee cannot, by obtaining a decree for the sale of the mortgaged property, obtain precedence over a prior mortgage, in respect to which all the requisites of the law have been complied with; and a statutory lien is as binding as a mortgage, and possesses the same capacity to hold the land as long as the statute preserves it in force.

In the case of liens upon lands created by judgment, which is matter of record, the law implies notice to all subsequent incumbrancers and purchasers; but in regard to executions against personal property, where the lien attaches from the time of the delivery of the execution to the officer, the purchaser of the goods is not presumed to suppose that the officer has committed any impropriety in the performance of his duty, and is protected in his purchase.

THIS was an agreed case, between the parties herein, in the Sangamon Circuit Court, at the November term 1843, the Hon. Samuel H. Treat presiding.

All the facts are embodied in the Opinion of the Court.

*J. Young Scammon,* for the plaintiff in error, filed an elaborate argument in writing, and relied upon the following authorities: R. L. 372, § 6; *Rankin* v. *Scott,* 12 Wheat. 177; 9 Petersdorff's Abr. 260; *Hutchinson* v. *Johnson,* 1 Term R. 727; Watson on Sheriff, 177; 6 Bac. Abr. 179; *Lambert* v. *Paulding,* 18 Johns. 311; *Wells* v. *Marshall,* 4 Cowen, 411.

*S. T. Logan,* and *A. Lincoln,* for the defendant in error, cited *Wiley* v. *Hyde,* 13 Johns. 249, and *Payne* v. *Drew,* 4 East, 545.

The Opinion of the Court was delivered by

YOUNG, J. This was an agreed case in the Court below. The record shows that on the eighteenth day of March, 1842, there was due to John Dickey from one Josiah T. Betts, one hundred and fifty dollars, for the rent of a house and lot belonging to Dickey and occupied by Betts; that on the first day of May, 1842, Dickey caused certain personal

property of Betts, found on the demised premises, to be dis-
trained for the payment of the rent, by a constable of San-
gamon county; and at the July term 1842, of the Sangamon
Circuit Court, recovered a judgment against Betts for the
amount of said rent.

On the eighth day of March, 1842, Rogers delivered to
the sheriff of Sangamon county a writ of *fieri facias*, duly
issued from the Cook Circuit Court, in favor of the said
Rogers, and against the said Josiah T. Betts, for the sum of
two hundred dollars, and on the twenty sixth day of May,
1842, and before the return day of said execution, the sheriff
levied upon the personal property then in the hands of the
constable by virtue of the said distress, and took the
property out of his possession.

The right of the sheriff to take the property from the
constable, and to have a prior lien against Dickey to satisfy
the execution of Rogers, was submitted by the parties to the
Court below to be decided, with the privilege of appeal to
this Court; with an understanding, that if the Court should
decide that Rogers, or the sheriff for his benefit, had a right
under the *fieri facias* execution, to take the property from
the constable, and to have a prior lien against Dickey for the
satisfaction of his debt, then the Court should order the
sheriff to proceed to sell the property for the benefit of
Rogers; but otherwise, to re-deliver it to the constable for
the use of Dickey. The record further shows, that the
property has not been sold either by virtue of the distress or
*fieri facias*.

The Circuit Court decided that the sheriff had no right,
under the circumstances, to take the property from the
constable, and ordered him to re-deliver it, in pursuance of
the agreement. This decision is assigned for error in this
Court.

The question is, whether an execution delivered to the
sheriff, and in his hands at the time a distress warrant is levied
by the constable, takes precedence of the levy by the con-
stable, where there has been no sale of the property levied
upon. The adjudged cases upon this subject, to which the

Court has been referred, are numerous and conflicting, and we are, for the first time, called upon to determine which construction we will adopt as best supported by the weight of authority, and as best calculated to subserve the ends of justice.

By the sixth section of the *Act concerning Landlords and Tenants*, in force June 1, 1827, it is provided, that the person to whom the rent is due, or his agent, may, with the sheriff, or some constable of the county, cause the goods of his tenant to be distrained, &c. By the third section of the *Act to exempt certain articles from execution*, in force February 26, 1841, it is further provided, that "in all cases where distress shall be made for rent, before any sale shall be made of the property distrained, it shall be the duty of the party distraining to have the defendant summoned before the Circuit Court, or justice of the peace if the demand shall not exceed one hundred dollars, and then and there prove his demand as in other cases." Under the provisions of the law, Dickey obtained a judgment in the Sangamon Circuit Court against Betts for one hundred and fifty dollars.

The sixth section of the " *Act concerning Judgments and Executions*," in force May 1, 1825, provides, "that all executions shall be made returnable ninety days after date, and no writ of execution shall bind the property of the goods and chattels of any person against whom such writ shall be issued, but from the time that such writ shall be delivered to the sheriff or other officer, to be executed; and for the better manifestation of said time, the sheriff or other officer, shall on the receipt of every such writ, indorse upon the back thereof, the hour, day of the month and year when he received the same." The eighth section of the Kentucky statute of 1796, concerning executions, provides, "that no writ of *fieri facias*, or other writ of execution, shall bind the property of the goods, &c. against which such writ issued, but from the time such writ shall be delivered to the sheriff, or other officer, to be executed," &c. 1 Littell's Kentucky Statutes, 540. Here, it will be perceived, that the language of the two Acts, so far as the Kentucky Act is quoted, is identical. Under this statute, the Court of Appeals of that

State decided in the case of *Tabb* v. *Harris*, 4 Bibb, 31, 32, that the lien operates only to preclude the defendant from so disposing of his estate as to prevent it from being taken in ,execution; but that as between different execution creditors, no lien is created by the delivery of the execution, but only by the first levy. *Arberry* v. *Nuland*, 2 J. J. Marsh. 421, 422; *Kilby* v. *Haggin*, 3 do. 211, 212. But if an officer having two executions against the same defendant, should levy the second execution. first, he will be liable to the creditor in the execution first delivered, although the levy and sale under the junior execution will be valid. *Kilby* v. *Haggin*, 3 J. J. Marsh. 212. So, where two or more executions in favor of different parties against the same person, shall be delivered to the officer at different times, it is his duty first to satisfy that which first came to his hands; and if he holds an older and junior execution in his hands at the same time, and levies the junior execution first, and by the satisfaction of it, shall so exhaust the property, that there shall not be sufficient to satisfy the older execution; and in consequence thereof, the older execution is satisfied out of the estate of the surety of the defendant in the older execution, the officer will be liable on a suit on his official bond, for the injury thereby inflicted on such surety, but the sale on the junior execution will be good. An officer holding the oldest execution is not entitled to take property out of the hands of another officer, who has made the first levy, although made in virtue of a younger execution. *Slaton* v. *Commonwealth*, 2 Dana, 399; *Commonwealth, &c.* v. *Stratton*, 7 J. J. Marsh. 91, 92, 93.

The principles settled by the Kentucky decisions in reference to this subject, therefore, are: *First*, that between execution creditors there is no priority of lien, other than that which is secured by a levy; and *second*, that when several executions are placed in the hands of different officers, each competent to act, and commanded by the writ to do so, the prior lien attaches in favor of the first levy, though made upon a junior execution, and one which came last to the hands of the officer. *Kilby* v. *Haggin*, 3 J. J. Marsh. 212, 213; *Million* v. *Commonwealth*, 1 B. Monroe, 311.

The New York statute declares, "that no writ of execution

Rogers v. Dickey.

shall bind the property of the goods, but from the time the writ shall be delivered to the sheriff." 1 R. L. 502. The construction given to that Act by the Supreme Court of New York is, that after the writ is so delivered, the defendant cannot make an assignment, or do any other act to divest the right of the sheriff to take the goods; that the delivery does not alter the property, but it continues in the defendant until the execution is executed, and an execution is said to be executed, when a sale has actually taken place. *Swain* v. *Morland*, 1 Brod. & Bing. 370. So, if two writs of *fieri facias* are delivered to the sheriff, and he sells under the junior execution, the sale cannot be avoided, and the party injured has no remedy, except against the sheriff. The property of the goods is bound by the sale, and cannot be taken by the execution first delivered, and the reason given is, "that sales made by the sheriff ought not to be defeated; for if they were, no man would buy goods levied upon by a writ of execution." *Marsh* v. *Lawrence*, 4 Cowen, 468; *Smallcomb* v. *Buckingham*, 1 Lord Raym. 252; *Payne* v. *Drew*, 4 East, 523 ; *Sandford* v. *Rosa*, 12 Johns. 163; *Hotchkiss* v. *McVicar*, Ib. 403. So, where a justice's execution was levied on goods which were sold, but previous to the levy a *fieri facias* execution against the same goods had been delivered to the sheriff; *held*, that the levy and sale upon the justice's execution, changed the property of the goods, and the sheriff could not afterwards take them. *Marsh* v. *Lawrence*, 4 Cowen, 461. But a *fieri facias* delivered to the sheriff takes preference of an attachment levied before the *fi. fa.* but after the delivery of the *fi. fa.* to the sheriff. *Wells* v. *Marshall*, 4 Cowen, 411. It was decided in the case of *Champenois* v. *White*, 1 Wend. 92, that after a levy under a junior *fi. fa.*, and the officer discovering that the property was subject to an older execution, he may return the *fi. fa. nulla bona,* and such return will be regular. The rule which is laid down in such cases, is, that so long as the property is not actually sold, it continued in the defendant, and the prior lien having attached, will be entitled to the precedence, and will overreach a previous levy by a junior execution, the only question

being the priority of the lien, while the general property of the goods remains in the defendant.

The principles settled by the New York decisions are : *First,* That after the delivery of the *fi. fa.* the defendant cannot, by assignment, or other act, divest the right of the sheriff to take the goods. *Second,* That the delivery of the *fi. fa.* to the officer, does not alter the general property in the goods, but it continues in the defendant until the execution is executed. *Third,* That the *fi. fa.* first delivered will have the priority of lien, and take the goods, although first levied upon by a junior *fi. fa.* at any time before the goods are sold. *Wells* v. *Marshall,* 4 Cowen, 411. *Fourth,* If the goods be sold on a junior execution before a levy by the older one, the sale is valid. *Marsh* v. *Lawrence,* 4 Cowen, 468. *Fifth,* That the liability of the sheriff to whom the first execution is delivered, will depend upon the question whether he is guilty of negligence in not having made a levy before the sale under the second execution; and, *Sixth,* If two executions are in the hands of the same officer, and he levies and sells upon the one last delivered, the purchaser acquires a good title to the property, yet the proceeds of the sale in the hands of the sheriff will be ordered by the Court to be paid to the plaintiff in the first execution to the amount of his debt and costs, leaving the residue, if any, to the plaintiff in the second execution. *Lambert* v. *Paulding,* 18 Johns. 311; *Marsh* v. *Lawrence,* 4 Cowen, 469.

The English statute of 29 Charles II. chap. 3, enacts "that no *fieri facias,* or other writ of execution shall bind the property of the goods, but from the time such writ shall be delivered to the sheriff, under-sheriff, or coroner, to be executed; and for the manifestation of the time, the sheriff, &c., upon the back of the said writ, shall indorse the day and year when received. Under this statute, which is similar in all respects to our own, if two writs of *fieri facias* are delivered to the sheriff, he is bound to execute that which is first delivered to him. At common law, before this statute was enacted, the *teste* of the writ, and not the delivery, governed the officer as to precedence. But now, in a case where A. delivered

a *fi. fa.* to the sheriff at nine in the morning, and afterwards at ten on the same day, B. delivered another, desiring him forthwith to execute it, which he did, and sold the goods; and afterwards executed A's *fi. fa.* on the same goods, it was *held*, that the first sale of the goods was valid, and that A. had remedy only by action against the sheriff. 6 Bac. Abr. 179; *Smallcomb* v. *Buckingham*, 1 Salk. 320; S. C. 1 Lord Raym. 251; Carth. 419; 5 Mod. 376; *Hutchinson* v. *Johnson*, 1 Term R. 729. But where two writs of *fi. fa.* against the same defendant are delivered to a sheriff on different days, and no sale is actually made of the defendant's goods, the first execution must have the priority, even though the seizure were actually made under the subsequent execution. *Hutchinson* v. *Johnson*, 1 Term R. 729. So, though a sheriff make a warrant and seizure of goods under a *fi. fa.* last delivered to him, yet the plaintiff in a *fi. fa.* first delivered to the sheriff, is entitled to be first satisfied out of the fruits of that seizure. This shows that if a sheriff has the writ in his office, though no levy be made on it, if he afterwards get possession of the goods, though apparently on another writ, yet his possession shall enure to the use of the first writ; and that the goods are bound by the writ in the sheriff's hands from the time of its delivery to him. *Jones* v. *Atherton*, 7 Taunton 56, 57. But where goods are sold by virtue of a levy made under a junior execution, the sale will be good, and the property cannot afterwards be taken on the senior execution. Although an extent at the suit of the Crown takes place of an execution, yet if the goods have been actually sold under the prior execution, the extent will not over-reach the sale. *Rybot v Pechham*, in note to 1 Term R. 730, 731; *Payne* v. *Drew*, 4 East, 544.

The doctrine is, therefore, well settled in England, which this Court is inclined to adopt: *First*, that where two or more writs of *fi. fa.* are delivered at different times, either to the same or different officers, and no sale is actually made of the defendant's goods, the execution first delivered must have the priority, though the first seizure may have been made on a subsequent execution; *Second*, but where the

goods are actually sold by virtue of a levy made under a junior execution, the sale will be good, and the property cannot afterwards be taken from the purchaser by the senior execution. The only remedy of the party injured is against the officer. *Smallcomb* v. *Buckingham*, 1 Lord Raym. 251; S. C. 1 Salk. 320; *Payne* v. *Drew*, 4 East, 523.

The case of *Payne* v. *Drew*, referred to by the defendant's counsel, is not different from the principles as here laid down. Lord Ellenborough, after premising that the decision in that case is not contradictory to any of the cases or principles of law before established in the Courts of that country, simply determines, "that where there are several authorities equally competent to bind the goods of the party, when executed by the proper officer, that they shall be considered as effectually, and for all purposes, bound by the authority which first actually attaches upon them in point of execution, and under which execution shall have been first executed." This case decides no more than this, that where a levy has been made under a junior execution, and a writ actually executed by a sale of the goods, that the sale will be valid, and the goods cannot afterwards be taken by the officer having a senior execution. So, in the case of *Rybot* v. *Peckham*, Michaelmas term, 19 Geo. III., supposed to be in conflict with the other authorities, it appeared afterwards, by a more minute examination of the case, that there was an actual sale of the property. 1 Term R. 730, 731, note *a.*

In regard to judgment liens upon land, created by statute, the rule is entirely different. In such cases, the lien commences with the judgment, and continues as long as the statute gives it priority over other liens; and the circumstance of not proceeding upon it, until a subsequent lien has been obtained and carried into execution, has never been considered as divesting the first judgment creditor of his right to have his judgment satisfied out of the same lands, if necessary. In the case of mortgages, a subsequent mortgagee cannot, by obtaining a decree for the sale of the mortgaged property, obtain precedence over a prior mortgage, in respect to which all the requisites of the law have

been complied with; and a statutory lien is as binding as a mortgage, and possesses the same capacity to hold the land as long as the statute preserves it in force. *Rankin* v. *Scott,* 4 Peters' Cond. R. 457.

The difference between liens upon lands and personal property is this: that in the case of liens upon lands created by judgment, which is matter of record, the law implies notice to all subsequent incumbrancers and purchasers; while such is not the case in regard to executions against personal property, where the lien attaches from the time of the delivery of the execution to the officer; and the purchaser of the goods is not presumed to suppose that the officer has committed any impropriety in the performance of his duty, and is, therefore, protected in his purchase. *Rankin* v. *Scott,* above cited.

Upon the whole, we think the sheriff did no more than his duty in taking the property from the constable, and that the same should be sold for the satisfaction of Rogers' execution.

Judgment of the Court below reversed with costs.*

*Judgment reversed.*

---

* A petition for a re-hearing was filed in this case, which was denied.