Ed Haugens, Appellant, v. W. F. Holmes, Appellee.
Gen. No. 9,769.

February term, 1942. Heard in this court at the Opinion filed April 8, 1942.

KENTON BROWN, of Wenona, and H. L. RICHOLSON, of Ottawa, for appellant.

MITCHELL & PETZ, of La Salle, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court. This is an appeal from a judgment of the county

court of Putnam county giving priority to the lien of an execution over that of a chattel mortgage in a trial of the rights of property. The facts were stipulated.

Remmer Siegman resides on a farm in the edge of Putnam county. He also operates 200 acres across the road in Marshall county. He owed appellant $1,551.32 and had been so indebted for a number of years and on June 16, 1941, he executed a chattel mortgage to appellant on 16 head of cattle, then in Marshall county, to secure the payment of said indebtedness. The mortgage was recorded the same day in Putnam county, under the statute which provides that when the mortgagor resides in this State, the mortgage shall be recorded in the county where he resides.

Appellee procured a judgment by confession for $421.76 against Siegman in the circuit court of Putnam county on April 1, 1941, and an execution, issued the same day, was returned "Not satisfied" on June 11, 1941. On the latter date an alias execution was issued and delivered to the sheriff of Putnam county. No levy was made on the cattle at that time because they were not found in Putnam county, but were in Marshall county, where they had always been. They were never in Putnam county prior to July 17, 1941 but on that day the sheriff of Putnam county found them in his county, levied upon them under his execution of June 11, 1941 and took them into his possession. Appellant gave the sheriff the statutory notice that he claimed the cattle under his chattel mortgage, and a trial under the provisions of the statute resulted in a judgment for appellee. How the cattle happened to get into Putnam county is not shown. It is not claimed that either party had anything to do with it. There is no question as to the bona fides of the mortgage or of the judgment. The only issue is one of law as to which is entitled to priority.

The following provisions of the act relating to Judgments, Decrees and Executions (Ill. Rev. Stat.

1941, ch. 77 [Jones Ill. Stats. Ann. 107.151, 107.154, 107.159, 107.160, 107.183]) are pertinent:

Sec. 1. '' . . . a judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained, situated within the county for which the court is held, from the time the same is rendered or revived, for the period of seven years and no longer; Provided, that there shall be no priority of the lien of one judgment over that of another rendered during the same calendar month and upon the filing in the office of the clerk of any court of record in any county in this State, of a transcript of a judgment or decree rendered in any other county of this State, such judgment shall have the like force and effect and shall be a lien upon the real estate of the party against whom the same is obtained in said county where filed, and execution may issue thereon in said county, in like manner as in the county where originally obtained. . . .''

Sec. 4. ''The person in whose favor any judgment, as aforesaid, may be obtained, may have execution thereon in the usual form, directed to the proper officer of any county, in this State, against the lands and tenements, goods and chattels of the person against whom the same is obtained, or against his body, when the same is authorized by law.''

Sec. 9. ''No execution shall bind the goods and chattels of the person against whom it is issued, until it is delivered to the sheriff or other proper officer to be executed; and for the better manifestation of the time, the sheriff or other officer shall, on receipt of such writ, indorse upon the back thereof the day of the month and year and hour when he received the same.''

Sec. 10. ''All and singular the lands, tenements, his real estate, goods and chattels (except such as is by law declared to be exempt) of every person against whom any judgment has been or shall be hereafter

obtained in any court of record, for any debt, damages, costs, or other sum of money, shall be liable to be sold upon execution, to be issued upon such judgment.''

Sec. 34. ''When a writ of execution is issued from a court of a county to a sheriff or other officer of another county, and levied upon any real estate in the latter county, the officer making such levy shall make a certificate thereof and file the same in the office of the recorder of his county. Until the filing of such certificate such levy shall not take effect, as against creditor and bona fide purchasers, without notice.''

A judgment did not create a lien upon the real estate of the debtor at common law. A judgment lien is purely a creature of the statute. (*Smith v. Toman,* 368 Ill. 414.) The purpose, therefore, of the statute is remedial and affords a means of collecting a judgment by forcing the sale of the judgment debtor's property, real or personal, or both, to the extent necessary to satisfy the debt and costs. By section 10 all and singular the lands, tenements, goods and chattels of the judgment debtor (except such as are exempt) shall be liable to be sold. In order to prevent the judgment debtor from disposing of his property to defeat satisfaction of the debt, a lien is created, which attaches to real estate when the judgment is entered, and to personal property when the execution is placed in the hands of the sheriff or other proper officer.

Title to real estate and changes therein, affecting third parties, is evidenced by and determined from the record. A judgment of a court of record is a part of such record. The reason for providing that an execution becomes a lien on personal property when delivered to the officer is that, ordinarily, title to that kind of property is not evidenced by record, but by possession and where a chattel mortgagee is not in possession he must record his mortgage. Were it

not for the lien of an execution the title to unmortgaged chattels could easily be juggled so as to defeat the judgment creditor. It is manifest that the legislature, in providing for a lien on real estate by the judgment, and on personal property by the delivery of an execution to the officer, did not intend to create any substantive difference in the remedy in either case. Under section 34 the lien does not attach to real estate in another county until the certificate of levy is filed. The intent and purpose of the statute is to enable a judgment creditor to reach the property of the judgment debtor, whether he seeks to collect from real estate or from personal property.

It is the settled law of this State that the lien of a judgment upon real estate is only coextensive with the limits of the county in which the judgment is rendered. Under section 1 of the statute, upon the filing of a transcript of the judgment in another county, it becomes a lien on any real estate of the judgment debtor in the latter county, and execution may issue thereon in like manner as in the county where the judgment was originally obtained. Under section 4, the judgment creditor may have execution from the court in which the judgment was obtained, directed to the proper officer of any county, against the real estate and personal property of the judgment debtor, and he may force a sale under either section. (*Sapp v. Wightman,* 103 Ill. 150; *Chicago Savings Bank & Trust Co. v. Coleman,* 283 Ill. 611.) It is noticeable that under either method he may reach real or personal property of the judgment debtor situated in another county, and that these are the only methods provided by which he can do so. Considering the above holdings and the limitations of the statute, it is clear that the execution issued in Putnam county was not a lien on the cattle while they were in Marshall county.

Appellee apparently agrees with that doctrine, for it is stipulated that the cattle being in Marshall county

was the reason no levy was made upon them while they were there. His claim is that when they got into Putnam county the lien of his execution dated back to the time it was placed in the hands of the sheriff, which was four days prior to the time the lien of the chattel mortgage took effect, and that therefore the lien of the execution is superior to that of the mortgage. Under that theory, if appellee had a judgment in Putnam county against the owner of real estate located in Marshall county, and appellant had a mortgage on the real estate recorded four days later, then, if the county boundaries should be afterward changed so as to put the land in Putnam county, would the lien of the judgment take priority over the lien of the mortgage? We see no difference in principle between such a case and the one at bar. The lien of a mortgage, as to third parties, whether on real estate or on chattels, attaches when the mortgage is properly recorded. When the chattel mortgage in this case was recorded in Putnam county because the statute so required, appellee had taken neither of the methods above mentioned to procure a lien on the cattle, and the mortgage was therefore a lien thereon while they were in Marshall county. Nor do we see any distinction because chattels are movables. The effect of a county boundary change would be the same as if the real estate was physically moved into the county. It could hardly be seriously claimed that such a change in location of real estate would give priority to the lien of the judgment over that of the mortgage. We think this would also apply if appellant had a judgment in a court of record in Marshall county and real estate subject to its lien should get into Putnam county by a boundary change. We observe no logical reason why a mere change in location should operate differently in respect to personal property than it would as to real estate. To hold that such a mere change in location would not impair the lien of a real estate mort-

gage, but would do so in case of a chattel mortgage, would violate the manifest intent and spirit of the statute to provide the same remedy as to either real or personal property.

Appellee is presumed to have known of the two methods provided by the statute for collecting his judgment from property in another county. He had ample opportunity to procure a lien on the cattle by either method before the chattel mortgage became the only lien thereon, but he did not exercise his privilege. There is no provision in the statute that would justify holding that under such circumstances he can take advantage of his want of diligence and now claim priority by a mere change in location. He cites authorities holding that where a chattel mortgage is recorded after an execution is delivered to the officer, and where a debtor acquires property after such delivery, the lien of the execution attaches as of the date of its delivery. Those cases did not involve property brought into a county subject to an existing lien in another county, but relate only to priority between liens in the same county. They are not in point.

The lien of appellant's mortgage was not subjected to the lien of appellee's execution by the cattle getting into Putnam county. The judgment of the county court is reversed and the cause is remanded with directions to enter judgment for appellant.

*Reversed and remanded with directions.*