KAISER-DUCETT CORPORATION, Plaintiff, *v.* CHICAGO-JOLIET LIVESTOCK MARKETING CENTER, INC., *et al.*, Defendants.—(CHARLES O'BRIEN & SON CONSTRUCTION CO., INC., Intervening Judgment-Creditor-Appellant, *v.* KAISER-DUCETT CORPORATION *et al.*, by George P. Troha, Receiver-Appellee.)

Third District   No. 80-16

Opinion filed July 17, 1980.

Hynds & Rooks, of Morris, for appellant.

James E. Egan, of McSteen, Phelan & Egan, of Joliet, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This appeal is brought by an intervening judgment creditor, Charles O'Brien & Son Construction Co., Inc., from an order entered by the Circuit Court of Will County in a mechanic's lien foreclosure suit initiated by the judgment debtor, Kaiser-Ducett Corporation, against the defendants, Chicago-Joliet Livestock Marketing Center, Inc., and the Central National Bank. By that order, the trial court directed the receiver, who had been appointed to hold an amount tendered to him by Chicago-Joliet Livestock in settlement of the suit by Kaiser-Ducett, to distribute the funds on a pro rata basis to the several judgment creditors who had filed claims, without priority being given to any of the claims.

On October 26, 1978, attorneys for Chicago-Joliet Livestock and intervening petitioner D. Koerner, Inc., presented a "Petition for Implementation of Proposed Settlement of Modified Judgment Order and For Appointment of Liquidating Receiver for Assets of Kaiser-Ducett Corporation" which was tendered as a proposed settlement of the entire cause of action. Among other things, the petition sets forth the numerous competing creditors' claims and turnover orders entered by various courts in citation-to-discover-assets proceedings and stated further that Chicago-Joliet Livestock was willing to tender the sum of $160,000 in full settlement of the modified judgment order entered on December 20,

1977, but was unable to determine to whom such sum should be disbursed, and recommended to the court that a receiver be appointed to receive the settlement amount and to disburse the funds in the amounts and in accordance with the priorities to be determined by the trial court.

On November 13, 1978, an order was entered in the trial court appointing George P. Troha as receiver to determine a plan of disbursement and directing him to collect the assets of Kaiser-Ducett, to notify creditors to tender claims, and to draw up and recommend a plan of distribution of Kaiser-Ducett assets in accordance with legal priorities, proper prorations, and upon proper notice to creditors filing claims and the parties to this cause.

On January 25, 1979, after hearing the recommendations of the receiver and noting that no objections were filed by the creditors as to the proposed settlement, the trial court authorized the receiver to pay D. Koerner, Inc., $36,000 and Shaheen, Lundberg, Callahan & Burke $80,000 in full settlement of their respective claims, and ordered that March 31, 1979, be set as the deadline for all creditors to file their claims with the clerk of the court. Additionally, the trial court ordered the receiver to provide the court, on or before March 31, 1979, with a suggested plan for distributing the remaining funds of approximately $44,000, taking into consideration all legal priorities and after satisfaction of the expenses of the receivership.

On January 8, 1979, the receiver mailed to the claimants a copy of the draft order subsequently entered on January 25, 1979. In his letter of January 8, 1979, the receiver stated that he would appreciate any suggestions and/or memoranda of law in regards to the priorities and distribution of the remaining funds. In response thereto, a number of the judgment creditors filed memoranda and/or appeared in court to state their views as to the proper rule to be applied in disbursing the funds.

Based upon the claims and supporting documents filed with and examined by the court, the trial court, on October 22, 1979, found in its order that no judgment creditor had taken the steps necessary to create a priority of one judgment creditor over another. By order of the trial court, dated December 3, 1979, the receiver was directed to distribute the funds in its hands to the numerous judgment creditors on a pro rata basis.

Of all the judgments of the creditors, O'Brien's was the oldest in time, having been entered on December 3, 1975, in the Circuit Court of Grundy County. Therefore, it is argued by this appellant that the appropriate rule for determining the priority of judgment liens is "first in time is first in right" and O'Brien should be fully satisfied before any funds are applied to satisfy any of the other judgment creditors.

■■ Clearly, if a lien has been perfected, the lien of a senior judgment is superior to that of a junior one. (See *Rogers v. Dickey* (1844), 6 Ill. 636.)

However, while a judgment may become a lien against real property if evidence of the judgment is filed in the office of the recorder of deeds in the county wherein the property is located (Ill. Rev. Stat. 1977, ch. 77, par. 1), such a judgment can not become a lien against personal property unless a writ of execution is delivered to the sheriff to be properly executed. (Ill. Rev. Stat. 1977, ch. 77, par. 9; *Haugens v. Holmes* (1942), 314 Ill. App. 166, 41 N.E.2d 109.) This is so for intangible as well as tangible personal property, even though a citation-to-discover-assets proceeding must also be instituted to obtain the intangible personal property of the debtor. *Mid-West National Bank v. Metcoff* (1974), 23 Ill. App. 3d 607, 319 N.E.2d 336; *Levine v. Pascal* (1968), 94 Ill. App. 2d 43, 236 N.E.2d 425. See also *Asher v. United States* (N.D. Ill. 1976), 436 F. Supp. 22, *aff'd* (7th Cir. 1978), 570 F.2d 682.

Appellant O'Brien points out that not only has it obtained a judgment against Kaiser-Ducett, but also, on the following day, December 4, 1975, O'Brien had execution issue and delivered to the Grundy County sheriff. Furthermore, it was noted that not only was a nonwage garnishment summons served on the Bank of North Aurora, but, also, citations to discover assets were issued upon W. Russell Collins, president and secretary of Kaiser-Ducett, as well as G. Harlan Bane, president of Chicago-Joliet Livestock.

■■ On the other hand, it is the receiver's contention, and the rationale underlying the trial court's decision, that the writ of execution was delivered to the sheriff of the wrong county, thereby creating no lien in the subject property. The purpose of the lien is to prevent the judgment debtor from disposing of his property to defeat the satisfaction of the debt, and so, the writ of execution must be delivered to the sheriff of the county wherein the property is located. See *Haugens v. Holmes* (1942), 314 Ill. App. 166, 41 N.E.2d 109.

In the case at bar, the judgment creditor suggests that there exist no territorial boundaries for an item of intangible personal property, such as the chose of action in this cause, and, therefore, to require the writ of execution to be delivered to the sheriff of a particular county would be placing form before substance especially since intangible personal property is not subject to levy by execution. We disagree.

The judgment creditor's suggestion overlooks the fact that for ease of administration, for a determination of jurisdiction, and for other reasons, intangible personal property is often presumed to have a location. (See, e.g., Ill. Rev. Stat. 1977, ch. 110½, par. 5—2. See also 15A C.J.S. *Conflict of Laws* §18(3)(1967); 64 C.J.S. *Municipal Corporations* §2021 (1950).) For taxation purposes, for example, the situs of intangible personal property owned by a corporation is the location of the chief office of that corporation. (64 C.J.S. *Municipal Corporations* §2021 (1950). See also Ill.

Rev. Stat. 1969, ch. 120, par. 538.) This appears to be based on the general rule that intangible movables have their situs at the domicile of the owner. 15A C.J.S. *Conflict of Laws* §18(3)(1967).

It follows, therefore, that the logical authority to whom the writ of execution should be delivered for the purpose of creating a lien on intangible personal property is the sheriff of the county in which the corporate judgment debtor has its principal place of business. From the pleadings, it is learned that Kaiser-Ducett is a Delaware corporation with its principal place of business located in the City of Aurora, County of Kane, Illinois. Thus, the failure of the judgment creditor to deliver its writ of execution to the Kane County sheriff indicates that a lien has not been perfected by this creditor and its judgment has no priority over the other listed judgment creditors.

We note that the trial court, in reaching its determinations, found that the chose in action was property located in Will County and that the writ of execution should have been delivered to the Will County sheriff. While this finding is not consistent with the opinion in this appeal, the difference does not require a reversal for the reason that no appeal has been presented by an intervening judgment creditor whose writ of execution was delivered to the Kane County sheriff.

For the foregoing reasons, the order of the Circuit Court of Will County is affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.