DIANE P. WOOD, Circuit Judge.
 

 Although the question before us today is naturally of interest to the parties, a change in Illinois law has relegated it to the history books for most of the rest of the world. We must decide whether the pre-1993 Illinois statute providing for a citation to discover assets in proceedings to enforce a judgment creates a lien on those assets in favor of the party on whose behalf the citation issues. We agree with the district court that the better view of Illinois law at the relevant time is that it did not, and we therefore affirm that court’s judgment.
 

 I
 

 There is no dispute about the underlying facts of the case, which are described in detail in the district court’s opinion. See
 
 Dominick’s Finer Foods, Inc. v. Makula,
 
 217 B.R. 550 (N.D.Ill.1997). In 1992, Dominick’s brought a successful suit in state court to enforce a guarantee John G. Makula had signed on a lease. On July 31, 1992, the state court granted summary judgment for Dominick’s. One month later, on August 31, 1992, Makula filed a motion for reconsideration, which was served on September 9, 1992. Also on August 31, Dominick’s obtained a citation to discover Makula’s assets, but this citation was never served. Instead, on September 25,1992, Dominick’s obtained leave to serve an alias citation, pursuant to ¶ 2-1402 of the Illinois Code of Civil Procedure. Ill.Rev.Stat. ch. 110 ¶ 2-1402 (1992). It served this citation on Makula on Octo
 
 *495
 
 ber 18, 1992. The citation required Maku-la to appear for an examination of his assets on October 29,1992.
 

 As of October 18, however, the state court had not yet ruled on Makula’s motion for reconsideration. Makula therefore believed that the citation was invalid, because a pending motion for reconsideration stays enforcement of a judgment under Illinois law. 735 ILCS 5/2-1203(b). Instead of agreeing to appear on October 29, Makula responded to the citation by filing a motion to quash service. That motion was continued by order of the state court until March 25, 1993, but approximately two weeks before that date, on March 11, 1993, the state court denied Makula’s motion for reconsideration.
 

 At that point, Dominick’s could have applied for a new citation, but it did not. Instead, it attempted to enforce the October 18 citation. Makula’s attorney agreed on March 24, 1993, that Makula would appear on April 8, 1993, to be examined pursuant to the October 18 citation. Recognizing that Makula’s motion to quash was still pending, the parties obtained an agreed order continuing that motion until April 19,1993.
 

 The level of Makula’s cooperation descended from this point forward. He did not show up for the April 8 examination, nor did he appear for the April 19 hearing the court had scheduled on the motion to quash. The court accordingly struck the motion to quash and ordered Makula to appear on May 17 to show cause why he should not be held in contempt for his failure to appear. For some reason, the order to show cause was never served on Makula. Instead, an alias rule issued on May 17, which was served on Makula on May 26, and required his appearance on June 10. Again, Makula failed to appear. Instead, his lawyer on June 10 filed another motion to quash, claiming improper service of process. The court continued that motion until June 21, but the state court proceedings were interrupted by Makula’s filing of a bankruptcy petition on June 18, 1993, which stayed further proceedings. Richard J. Mason, the appellee here, was appointed to serve as successor trustee.
 

 Before the bankruptcy court, Dominick’s argued that its service of the alias citation to discover assets gave it a lien on Maku-la’s intangible personal property — specifically, on 67 Class A partnership units that Makula owned in an accounting partnership. The trustee opposed this ■ position for four reasons: (1) the citation was invalid because it issued while a timely motion for reconsideration was pending; (2) the citation could not create a lien on the partnership interests because it was served only on Makula, not on the partnership; (3) even if the citation was validly issued and properly served, it did not create a lien under Illinois law; and (4) even if the citation did create a lien, the trustee could undo the lien through the exercise of his strong-arm powers under 11 U.S.C. § 544(a) or because it was an avoidable preference under 11 U.S.C. § 547.
 

 The bankruptcy court and then the district court on appeal made a number of preliminary rulings that were favorable to Dominick’s. Even though they both accepted the trustee’s first argument that the citation was invalid, the bankruptcy court found that the trustee was equitably estopped from making this argument, while the district court (which rejected the bankruptcy court’s application of equitable estoppel) found that Makula had waived the right to argue invalidity, a waiver that bound the trustee. Next, both the bankruptcy and district courts ruled that service on Makula (instead of the partnership) was sufficient. The trustee finally prevailed on his argument that a citation to discover assets could not create a lien under pre-1993 Illinois law. In light of this finding, neither court reached the trustee’s remaining points. An order fixing priorities among creditors is appealable under 28 U.S.C. § 158(d), see,
 
 e.g., Matter of Bailey,
 
 999 F.2d 237, 239-40 (7th Cir.1993);
 
 King v. Ionization Int’l, Inc.,
 
 825 F.2d 1180, 1184 (7th Cir.1987), and Domin
 
 *496
 
 ick’s has accordingly brought this question to us.
 

 II
 

 We find it necessary to address only the trustee’s third argument in any detail. Although the lower courts found in Dominick’s favor with respect to the first two arguments (albeit for different reasons), in order to prevail Dominick’s must convince us not only that there was a valid citation properly served, but also that a citation to discover assets created a lien under pre-1993 Illinois law. Because there is no cross-appeal, we take as a given that the trustee was precluded from arguing the citation’s invalidity and that service on Makula personally was adequate, consistently with the district court’s decision. We note that the district court did not address the argument the trustee has raised here that the citation lapsed automatically six months after October 29, 1992, but that point too is easily resolved in Dominick’s favor. We cannot find any reference to it before the lower courts, and so the trustee probably waived it. Even if we are incorrect about waiver, however, we find no merit in the point. Illinois Supreme Court Rule 277(f) starts the six-month period running from the date of the debtor’s actual appearance; Makula’s delaying tactics dragged on until the bankruptcy petition was filed, and thus the six-month period never ran.
 

 This leaves the question whether Dominick’s had a lien on Makula’s partnership units for purposes of the bankruptcy proceeding. That depends on whether Illinois law recognized such an interest at the time the bankruptcy proceeding was commenced. See
 
 Butner v. United States,
 
 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (state law generally controls questions about property interests in a bankrupt’s estate);
 
 Matter of Century Investment Fund VIII Ltd. Partnership,
 
 937 F.2d 371, 375 (7th Cir.1991). This in turn requires us to decide whether the pre-1993 citation statute, Ill.Rev.Stat. ch. 110 ¶ 2-1402, to which we shall refer as the “former ¶ 2-1402,” created such an interest. We look first to the statute itself and the cases construing it, and we then consider whether Illinois would take into account certain language in the 1993 legislation in determining the meaning of the earlier law.
 

 The former ¶ 2-1402 established a procedure under which a judgment creditor was entitled:
 

 to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment therefrom, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment.
 

 Id.
 
 at ¶ 2-1402(a). The judgment creditor began the supplementary proceeding by obtaining the service of a citation issued by the clerk of the court.
 
 Id.
 
 In addition to serving as the formal start of these supplementary proceedings, the citation could also “prohibit the party to whom it [was] directed from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom .... ”
 
 Id.
 
 at ¶ 2 — 1402(d)(1). The citation Dominick’s procured included such a provision. Notably, the statute said nothing about a citation having the effect of creating a lien on any or all of the debtor’s property.
 

 Illinois cases construing the former ¶ 2-1402 were inconsistent at best, and we have no explicit guidance from the Illinois Supreme Court. The latter fact raises the possibility of certifying the question to that court under Circuit Rule 52 and Illinois Supreme Court Rule 20. Although an answer would determine the outcome of the case and accordingly the issue may technically meet the Illinois Supreme Court’s standards for certification, in our view this
 
 *497
 
 is not a proper candidate for certification. The meaning of the pre-1993 statute is not a question likely to recur in enough other cases, nor can it be called a matter of vital public concern. See
 
 Diginet, Inc. v. Western Union ATS, Inc.,
 
 958 F.2d 1388, 1395 (7th Cir.1992) (explaining that issues that may never recur and lack broad, general significance are not suitable for certification to a state’s highest court). Furthermore, there are a number of Illinois appellate court decisions on which we can rely to decide this case. The fact that we may need to probe below the surface of some of them in order to tease out a consistent rule is hardly reason enough on its own to burden the Illinois Supreme Court with this issue.
 

 As of early 1993, there were two lines of authority among the Illinois appellate courts. One case took the position that service of a citation to discover assets did not, in itself, create a lien. See
 
 Kaiser-Ducett Corp. v. Chicago-Joliet Livestock Marketing Center, Inc.,
 
 86 Ill.App.3d 216, 41 Ill.Dec. 651, 407 N.E.2d 1149, 1151 (Ill.App.Ct.1980). Two other Illinois decisions held that it did. See
 
 Mid-West Nat’l Bank of Lake Forest v. Metcoff,
 
 23 Ill.App.3d 607, 319 N.E.2d 336, 340 (Ill.App.1974);
 
 Bank of Broadway v. Goldblatt,
 
 103 Ill.App.2d 243, 243 N.E.2d 501, 503 (Ill.App.1968). Last, as we discuss below, the importance of service alone was unclear in
 
 Levine v. Pascal,
 
 94 Ill.App.2d 43, 236 N.E.2d 425 (Ill.App.1968). This court appears to have assumed in dicta that the
 
 Metcoff-Goldblatt
 
 line of authority was controlling, but it is clear that the question was not squarely presented in either of the cases before it. See
 
 King,
 
 825 F.2d at 1188;
 
 Asher v. United States,
 
 570 F.2d 682, 683 (7th Cir.1978). We therefore regard the question as open for our purposes. Several decisions in the district court and the bankruptcy court for the Northern District of Illinois have also discussed the issue. See,
 
 e.g., Water Technologies Corp. v. Calco, Ltd.,
 
 132 F.R.D. 670 (N.D.Ill.1990);
 
 In re Jaffe,
 
 111 B.R. 701 (Bankr.N.D.Ill.1990). These are plainly not binding precedent either for us or for the Illinois courts, but they are indirectly useful insofar as they offer a reasoned analysis of Illinois law.
 

 In our view, the best analysis of Illinois law appears in Bankruptcy Judge Barli-ant’s opinion in
 
 Jaffe,
 
 where he decided that a citation under the former ¶ 2-1402 did not create a lien. He supported this result in several ways. First, he compared the silence in ¶ 2-1402 with a number of other Illinois statutes that specifically provided for Hen creation, including Ill.Rev. Stat. ch. 110 ¶ 12-707(a) (1987) (Hen created when a garnishee is served with a garnishment summons);
 
 id.
 
 ¶ 12-101 (lien on real estate created when a transcript, certified copy, or memorandum of judgment is filed in the recorder’s office);
 
 id.
 
 ¶ 12-808(b) (lien on wages created when employer served with wage deduction summons).
 
 Jaffe,
 
 111 B.R. at 704. Second, he noted that the citation statute .does not distinguish between tangible and intangible property, yet the courts that had held that a citation created a Hen had somehow tried to limit it to intangible property.
 
 Id.
 
 at 708-09. Significant problems, he thought, could arise if the mere issuance and service of a citation created a lien on real property. The citation statute does not provide the kind of notice to other interested parties that the other statutes that specifically allow lien creation did, which he suggested was an additional reason to think that the IHinois legislature had not taken that step in the former f 2-1402.
 
 Id.
 
 at 709. Last, he noted that the sanction for violating the prohibition found in ¶ 2-1402(d)(l) (concerning transfer of property subject to the citation proceeding) is punishment for contempt or a personal judgment, not an order operating directly upon the identified property.
 
 Jaffe,
 
 111 B.R. at 703 (citing
 
 Bank of Aspen v. Fox Cartage,
 
 126 Ill.2d 307, 127 Ill.Dec. 952, 533 N.E.2d 1080, 1084 (Ill.1989)).
 

 
 *498
 
 Turning to the case law, Judge Barliant traced the genesis of the cases holding that a citation proceeding creates a lien to a misunderstanding of the Illinois appellate court’s decision in
 
 Levine, supra.
 
 In that case, the plaintiff Levine had instituted an action to execute on a judgment he had won and to discover assets belonging to the defendants. On the same day, the clerk of the court issued both a writ of execution and a citation to discover assets. The court then had to decide whether a lien arose in the course of the supplementary proceedings. It explained its affirmative conclusion in the following passage:
 

 ... [Pjlaintiff pursued two remedies following the confession of judgment against the defendants. As well as procuring a writ of execution, plaintiff initiated citation proceedings under Section 73 of our Civil Practice Act. Having the status of judgment creditor, this remedy was available to plaintiff and sufficient to establish his claim to the beneficial interest of land Trust No. 15222. Clearly, plaintiff became a lien creditor as defined in Section 9-301(3) of the Commercial Code when the writ of execution was placed in the hands of the sheriff. While it may be doubtful whether the plaintiff could effectively enforce his lien by means of the writ of execution, there is no doubt that he could do so through citation proceedings.
 

 236 N.E.2d at 429 (citations omitted). The
 
 Metcoff
 
 and
 
 Goldblatt
 
 courts read this passage to mean that the citation proceeding alone gave rise to a lien, but we agree with
 
 Kaiser-Ducett
 
 and
 
 Jaffe
 
 that this overlooks the
 
 Levine
 
 court’s critical statement near the middle of the passage that it was the delivery of the writ of execution that gave rise to the lien, not the institution of the citation proceedings. In
 
 Kaiser-Du-cett,
 
 the court distinguished between the act that creates the lien (the delivery of the writ of execution) and subsequent actions that may be needed to enforce the lien (the citation proceedings). See 41 Ill.Dec. 651, 407 N.E.2d at 1151. This interpretation is consistent with other case law that emphasizes the discovery-like character of the citation proceeding. See
 
 Water Technologies,
 
 132 F.R.D. at 676 n. 4. Thus, if the Illinois legislature had left the former ¶ 2-1402 untouched, our analysis would be at an end.
 

 It did not, of course. In 1993, it enacted a new and more elaborate version of ¶ 2-1402. Most important for our purposes is a new subsection (m), which reads as follows:
 

 The judgment or balance due on the judgment becomes a lien when a citation is served in accordance with subsection (a) of this Section. The lien binds nonexempt personal property, including money, choses in action, and effects of the judgment debtor as follows:
 

 (1) When the citation is directed against the judgment debtor, upon all personal property belonging to the judgment debtor in the possession or control of the judgment debtor or which may thereafter be acquired or come due to the judgment debtor to the time of the disposition of the citation.
 

 (2) When the citation is directed against a third party, upon all personal property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the [sic] judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation.
 

 The lien established under this Section does not affect the rights of citation respondents in property prior to the service of the citation upon them and does not affect the rights of bona fide purchasers or lenders without notice of the citation. The lien is effective for the period specified by Supreme Court Rule.
 

 This subsection (m), as added by Public Act 88-48, is a declaration of existing law.
 

 
 *499
 
 735 ILCS 5/2-1402(m). Dominick’s has seized upon the last sentence of the new subsection (m) for its final argument. Given the confused state of the prior law, it reasons, the legislature was entitled to decide which version was correct and to make a binding choice in the new legislation. Two other courts have held that the 1993 amendment was indeed clarifying, not new, and they have thus used this as an independent reason to interpret the former ¶ 2-1402 citation proceeding as creating a hen. See
 
 Bloink v. Olson,
 
 265 Ill.App.3d 711, 202 Ill.Dec. 760, 638 N.E.2d 406, 410 (Ill.App.1994);
 
 In re Prior,
 
 176 B.R. 485, 493 (Bankr.S.D.Ill.1995). The district court in the present case, in contrast, concluded otherwise.
 

 Once again, our primary source of guidance about the effect of subsequent legislation must come from the Illinois Supreme Court, if it has spoken on the matter. In this instance, it has done so, in
 
 Roth v. Yackley,
 
 77 Ill.2d 423, 33 Ill.Dec. 131, 396 N.E.2d 520 (Ill.1979). In
 
 Roth,
 
 the 77th Illinois General Assembly had enacted a law that permitted courts to place “reasonable terms and conditions” on probation terms for certain drug offenders. Some courts thought that this language precluded the imposition of fines as one of the “conditions,” and some probationers sued to recover fines they had paid. Against this background, the 80th General Assembly enacted a new statute that it announced was “declaratory of existing law,” which permitted the imposition of fines.
 

 The Illinois Supreme Court approached the meaning of the earlier law as a question exclusively for the court. This was so whether the prior statutory language was clear, or resort to legislative intent would have been necessary to understand it. The court noted that the 80th General Assembly was in no position to know what the 77th General Assembly was thinking when it passed the original act:
 

 ... it is logically difficult to perceive how the declaration and the amendments by the 80th General Assembly can be simply a clarification of the intent of the 77th General Assembly which originally enacted the statute seven years earlier since only a fraction of the individuals who comprised the General Assembly were the same at both times.
 

 Id.
 
 at 522. Furthermore, the court held that, under the separation of powers doctrine governing in Illinois, the legislature has no power retroactively to amend a statute and thereby to annul an earlier decision of the court.
 
 Id.
 
 This does not mean, however, that the General Assembly cannot pass new legislation with retroactive effect. As the Illinois Supreme Court explained in a later case:
 

 [w]hile the General Assembly can pass legislation to prospectively change a judicial construction of a statute if it believes that the judicial interpretation was at odds with legislative intent, ... it cannot effect a change in that construction by a later declaration of what it had originally intended.
 

 Hamilton County Telephone Coop. v. Maloney,
 
 151 Ill.2d 227, 176 Ill.Dec. 62, 601 N.E.2d 760, 762 (Ill.1992) (citations omitted). Any retroactive effect, therefore, must come from the new statutory language; the legislature cannot impose its own later interpretation of earlier laws on the courts. See also
 
 Sanelli v. Glenview State Bank,
 
 108 Ill.2d 1, 90 Ill.Dec. 908, 483 N.E.2d 226 (Ill.1985) (distinguishing between permissible enactments that can apply to pending cases and impermissible efforts to rewrite earlier statutes).
 

 We agree with the trustee that the final sentence of the new 2-1402(m) must be disregarded, because it crosses the line the Illinois Supreme Court recognized in
 
 Roth, Sanelli,
 
 and
 
 Maloney.
 
 In fact, if the question were to come up before the Illinois Supreme Court, it is our best guess that the court would find significant new material in the new subsection (m) that takes it well beyond a clarification of the earlier law. The paragraph that follows subpart (2) introduces precisely the kind of guidance about the rights of various parties to
 
 *500
 
 the property that the
 
 Jaffe
 
 court noted was missing in the earlier version of the law. We therefore find nothing in the new legislation that causes us to reconsider our earlier interpretation of the pre-1993 version of the law.
 

 Even if Dominick’s properly served a valid citation to discover assets under the former ¶ 2-1402, that act did not give rise to a lien in its favor on Makula’s partnership units. In light of our conclusion on this point, we have no occasion to reach the trustee’s arguments in support of the judgment based on his strong-arm powers or the preference rules.
 

 The judgment of the district court is Affirmed.