**In re Lawrence A. JAFFE, Debtor.**

**CHICAGO CITY BANK & TRUST CO., Plaintiff,**

v.

**Lawrence A. JAFFE, Defendant.**

**Bankruptcy No. 89 B 13268.
Adv. No. 89 A 0821.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 15, 1990.

Richard M. Franklin, Melissa Arndt Galindo, Baker & McKenzie, Chicago, Ill., for Chicago City Bank & Trust Co.

Harold L. Moscowitz, Robbins, Rubinstein, Salomon & Greenblatt, Chicago, Ill., for debtor/defendant.

Harry S. Miller, Chicago, Ill., for Trustee in Bankruptcy.

MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Debtor has moved to dismiss Count I of Chicago City Bank & Trust Company's first amended complaint to determine the dischargeability of a debt and objecting to the discharge of the Debtor. Count I alleges that the Debtor is not entitled to a discharge of the debt due the Bank because that debt is for embezzlement or larceny of funds in which the Bank had an interest or, alternatively, for the willful and malicious injury to such property interest of the Bank. The Court holds that the citation to discover assets upon which the Bank relies, did not create a lien on or other property interest in the funds, and therefore concludes that Count I fails to state a claim upon which relief can be granted because the Bank had no interest in the funds. Count I is therefore dismissed pursuant to

Fed.R.Civ.Pro. 12(b)(6), made applicable to these proceedings by Bankr.R. 7012(b).[1]

## FACTS

In 1987, the Circuit Court of Cook County, Illinois entered a judgment for $427,-289.53 in favor of the Bank and against the Debtor. The Bank then instituted supplementary proceedings to collect the judgment and on January 13, 1989, the circuit court issued an alias citation to discover assets directed to the Debtor. The citation required the Debtor to appear for an examination "concerning the property or income of, or indebtedness due" the Debtor, and to produce specified documents at that examination. The citation was continued several times by court order. The citation contained a provision that prohibited the Debtor from transferring any of his property that may be subject to execution or garnishment:

> You are prohibited from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which he may be entitled or which may be acquired by or become due to him and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to him, until further order of court or termination of the proceedings....

> Your failure to comply with this citation may subject you to punishment for contempt of this court or to a judgement for the amount unpaid.

No language in the citation expressly purports to create a lien or other interest in any property.

The circuit court did not enter any order pursuant to the citation. In March, 1989, while the citation proceeding was still pending, the Debtor withdrew $63,787.60 from one of his bank accounts and subsequently transferred the money to several third par-

ties. On August 10, 1989, the Debtor filed a voluntary chapter 7 bankruptcy petition.

The Bank filed a two count "Adversary Complaint Objecting to Discharge". Count I of the complaint requests that the Court find the Debtor's debt to the Bank non-dischargeable to the extent of $63,787.60 under 11 U.S.C. § 523(a)(4) (excepting debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" from discharge) or, in the alternative, 11 U.S.C. § 523(a)(6) (excepting debts "for willful and malicious injury by the debtor to another entity or to the property of another entity"). Count II of the complaint requests that the Court deny the Debtor a discharge because the Debtor's alleged actions fall within the provisions of 11 U.S.C. § 727(a)(2). Count II of the complaint has been set for trial. The Debtor has moved to dismiss Count I on the basis that the Bank has failed to state a claim upon which relief may be granted.

## DISCUSSION

### ELEMENTS OF 11 U.S.C. §§ 523(a)(4) & (6) AND THE ISSUE PRESENTED.

Count I of the Bank's complaint alleges that the Debtor committed larceny or embezzlement and therefore part of the debt owed to the Bank should be found non-dischargeable under 11 U.S.C. § 523(a)(4). Both larceny and embezzlement involve the taking or conversion of property that belongs to another person. Larceny is the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to his use without the consent of the owner. *E.g., In re Hoffman*, 70 B.R. 155, 161 (Bankr.W.D. Ark.1986); 3 Collier on Bankruptcy ¶ 523.15[3] (15th Ed.1982). Embezzlement is the fraudulent or knowing and willful misapplication or conversion of property that belongs to another person by one to whom such property has been entrusted or into whose hands it has lawfully come. *E.g., In re Iaquinta*, 95 B.R. 576, 580 (Bankr.N.D.Ill.1989).[2]

---

**1.** This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

**2.** The Court has applied the federal common law definitions of the terms "larceny" and "embezzlement" for the purpose of determining the dischargeability of a debt under 11 U.S.C.

■ The Bank alternatively argues that the debt is non-dischargeable under 11 U.S.C. § 523(a)(6). Section 523(a)(6) provides that a debtor is not entitled to discharge from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. The knowing conversion of collateral by a debtor can give rise to a non-dischargeable debt under § 523(a)(6). *E.g., In re Scotella,* 18 B.R. 975, 976 (Bankr.N.D.Ill.1982); *Iaquinta,* 95 B.R. at 581.

In order to invoke section 523(a)(4) or section 523(a)(6), then the Bank must allege that it had an interest in property wrongfully taken, embezzled or converted by the Debtor. The controlling issue here, therefore, is whether the Bank has properly alleged a property interest in the $63,-787.60 the Debtor withdrew from his bank account. The Bank argues that it had such an interest because the initiation of the citation proceeding gave rise to a lien in the Debtor's property. The Debtor contends that the citation created no such lien or any other property interest.

■ Bankruptcy courts should look to state law to determine property rights. *In the Matter of Skelly,* 38 B.R. 1000, 1001 (D.Del.1984). In Illinois, a lien has been defined as "a legal claim or charge on property, either real or personal, as security for the payment of some debt or obligation, and for which the property may be sold in discharge of the lien." 25 I.L.P. Liens § 2; *See also, City of Chicago v. City Realty Exchange,* 127 Ill.App.2d 185, 190, 262 N.E.2d 230, 235 (1st Dist.1970) ("charge on property for payment of debt is a lien"). However, whether, under Illinois law, the initiation and service of a citation to discover assets gives rise to a lien or some other property interest is not a question clearly answered by state court cases. Federal courts are also in conflict on this issue. But we must begin with the statute.

§ 523(a)(4). *See In re Bevilacqua,* 53 B.R. 331, 333 (Bankr.S.D.N.Y.1985); *In the Matter of Storms,* 28 B.R. 761, 765 (Bankr.E.D.N.C.1983).

## STATUTORY LAW GOVERNING CITATIONS TO DISCOVER ASSETS.

■ The Illinois Code of Civil Procedure section 2–1402 governs supplementary proceedings to collect unpaid judgments. Ill. Rev.Stat. ch. 110 ¶ 2–1402 (1987).[3] This statute does not expressly create a lien upon the issuance of a citation, but provides that once assets are found, the court may then enter an appropriate order or judgment to apply the discovered assets to satisfy the judgment. Section 2–1402 states in part (emphasis added):

(a) *A judgment creditor ... is entitled to prosecute supplementary proceedings* for the purpose of examining the judgment debtor or any other person *to discover assets or income of the debtor* not exempt from the enforcement of the judgment therefrom, a deduction order or garnishment, *and* of *compelling the application of the non-exempt assets or income discovered toward the payment of the amount due under the judgment.* A supplementary proceeding shall be commenced by the service of a citation issued by the clerk ...

(b) *When assets or income* of the judgment debtor not exempt from the satisfaction of the judgment, a deduction order or garnishment *are discovered, the court may by appropriate order or judgment:*

(1) *Compel the debtor to deliver up ... in whole or in part, money, chooses in action, property or effects in his or her possession or control, so discovered....*

(3) Compel any person cited, other than the judgment debtor, to deliver up any assets so discovered....

(4) *Enter an order upon or judgment against the person cited that could be entered in any garnishment proceeding....*

Property "delivered up" pursuant to an order is delivered to the sheriff for public sale and the proceeds are applied to the judgment. Ill.Rev.Stat. ch. 110 ¶ 2–1402(c).

**3.** This section was formerly section 73 of the Illinois Civil Practice Act.

Here, there was no order. The Bank argues that the citation itself gave rise to a lien.

The statute also provides that the citation may prohibit the party served with the citation from making or allowing any transfer of the property that is subject to the citation proceeding until an appropriate court order is entered or until the proceeding is terminated. Ill.Rev.Stat. ch. 110 ¶ 2–1402(d)(1) (1987). The citation here contained such a prohibition. This prohibition is neither an injunction nor a seizure of property, but "simply notifies the [cited party] of the penalties for transferring or disposing of assets belonging to the judgment debtor." *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill.2d 307, 315, 127 Ill. Dec. 952, 956, 533 N.E.2d 1080, 1084 (1989).

Moreover, there is no evidence of legislative intent that the restraining provision of a citation create a lien on property within its scope. The Historical and Practice Notes to section 2–1402 state:

A restraining provision ... does not purport to adjudicate any rights in the property held by the party to whom it is addressed. It merely requires that the party hold property which is subject to the reach of the judgment creditor in *status quo* until the judgment creditor's rights can be determined.

Ill.Ann.Stat. ch. 110 ¶ 2–1402 (Smith–Hurd 1983). By the terms of the restraining provision, the sanction for violation is punishment for contempt or a personal judgment. The restraining provision of a citation, therefore, does not affect rights in property, but only operates against the person in possession of the property.[4] *See*

*Bank of Aspen,* 126 Ill.2d 307, 127 Ill.Dec. 952, 533 N.E.2d 1080.

The Debtor's position that no lien was created by the mere issuance of a citation is further supported by a comparison of section 2–1402 with other statutes. Although the statute governing citations to discover assets does not provide that a lien is created upon initiation of a supplementary proceeding, other sections of the Illinois Code of Civil Procedure do specifically provide for the creation of liens. Ill.Rev.Stat. ch. 110 ¶ 12–707(a) (1987) (lien created when the garnishee is served with garnishment summons); Ill.Rev.Stat. ch. 110 ¶ 4–126 (1987) (lien created upon the service of an order of attachment); Ill.Rev.Stat. ch. 110 ¶ 12–101 (1987) (lien on real estate created when a transcript, certified copy or memorandum of judgment is filed in recorder's office); Ill.Rev.Stat. ch. 110 ¶ 12–808(b) (1987) (lien on wages created when employer served with wage deduction summons). The omission of such explicit lien-creating language in the citation statute indicates that the Illinois General Assembly did not intend that a lien come into existence upon the initiation or service of a citation.

In short, a citation to discover assets under this statute does not adjudicate rights in property, but aids in the discovery of assets. *First National Bank and Trust Co. of Gibson City v. Wissmiller*, 182 Ill.App.3d 481, 131 Ill.Dec. 2, 538 N.E.2d 190 (4th Dist.1989). Those assets may then be reached, sold and applied to the judgment only after further proceedings and a court order. As this Court reads section 2–1402, "a legal claim or charge on property"—that is, a lien under

---

**4.** A similar procedure in New York, upon which Illinois law is based, has been held not to create a lien. The New York Civil Practice Law and Rules § 5222(b) provides for a restraining notice in supplementary proceedings similar to the restraining provision contemplated in the Illinois statute on supplementary proceedings. The restraining notice under the New York statute does not give the judgment creditor a lien on the debtor's property. *E.g., Medi–Physics, Inc. v. Community Hospital of Rockland County,* 105 Misc.2d 574, 432 N.Y.S.2d 594 (1980); Practice Commentaries, N.Y. Civ.Prac.L. & R. C5222:4 (McK.1978).

This is important because the Illinois statute was based on the predecessor of the provision construed in *Medi–Physics.* The current Illinois section 2–1402 is based on the former New York Civil Practice Act, § 773 et seq. *See* Joint Committee Comments [1955], Ill.Ann.Stat. ch. 110 ¶ 2–1402 (Smith–Hurd 1983). The New York Civil Practice Act was repealed and replaced in 1962 by the New York Civil Practice Law and Rules. Section 5222 of the New York Civil Practice Law and Rules is based upon parts of the old § 773 of the New York Civil Practice Act. *See* Legislative Studies and Reports, N.Y. Civ.Prac.L. & R. 5222 (McK.1978).

Illinois law (see above, page 703)—is not created before the citation court enters an order requiring the discovered property to be "delivered up" to the sheriff for sale and application to the judgment. It is the order, and not the citation, that makes the property liable to seizure and sale.

## ILLINOIS CASE LAW.

Illinois courts have varied on the issue of whether the issuance of a citation to discover assets creates a lien. Much of the confusion seems to involve a misunderstanding of *Levine v. Pascal*, 94 Ill.App.2d 43, 236 N.E.2d 425 (1st Dist.1968). The dispute in *Levine* was between a judgment creditor and a creditor holding an unperfected security interest in the beneficial interest of a land trust. A judgment creditor prevails over the holder of an unperfected security interest only if the judgment creditor "has acquired a lien on the property involved by attachment, levy or the like". Ill.Rev.Stat. ch. 26, ¶ 9–301, ¶ 9–302 (1987). The issue, therefore, was when, if at all, did the judgment creditor "acquire a lien" in the beneficial interest. The judgment creditor had issued both a writ of execution[5] and a citation to discover assets. The holder of the unperfected security interest argued, in part, that a lien was not created by the judgment creditor's writ of execution, citing a case "which holds that choses-in-action are not subject to seizure and sale under execution." *Levine*, 94 Ill.App.2d at 52, 236 N.E.2d at 429. The court, however, resolved the issue by distinguishing between the acquisition of a lien and the enforcement of that lien.

> Clearly, plaintiff became a lien creditor as defined in section 9–301(3) of the Commercial Code when the writ of execution was placed in the hands of the sheriff. See chapter 77, section 9, Ill.Rev.Stat. 1965, and *Century Pipe Supply Co. v. Empire Factors*, 19 Ill.App.2d 165, at 169, 153 N.E.2d 298. While it may be

doubtful whether the plaintiff could effectively enforce his lien by means of the writ of execution, there is no doubt that he could do so through citation proceedings.

94 Ill.App.2d at 55, 236 N.E.2d at 430.

The confusion began with *Mid–West National Bank of Lake Forest v. Metcoff*, 23 Ill.App.3d 607, 319 N.E.2d 336 (2nd Dist. 1974) and *Bank of Broadway v. Goldblatt*, 103 Ill.App.2d 243, 243 N.E.2d 501 (1st Dist.1968). Both relied on *Levine* to support the proposition that the initiation of citation proceedings gave rise to a lien. Both the *Metcoff* and the *Goldblatt* opinions state in identical language:

> In *Levine v. Pascal* [citation omitted], it was held that a creditor who proceeds by a citation to discover assets is a lien creditor as defined in Section 9–301(3) of the Uniform Commercial Code and that such creditor has a superior right to the beneficial interest in a land trust over a creditor who was assigned a beneficial interest in the trust as security for a loan but who failed to file a financing statement covering that interest.

*Metcoff*, 23 Ill.App.3d at 611, 319 N.E.2d at 340; *Goldblatt*, 103 Ill.App.2d at 247, 243 N.E.2d at 503.[6] Both of these decisions, however, ignored the holding in *Levine* that the lien was acquired by the writ of execution, even if it could only be enforced through a citation proceeding. *Levine* plainly did not hold that a lien was created by the service of the citation. *See, General Telephone Co. of Illinois v. Robinson*, 545 F.Supp. 788, 793 (C.D.Ill.1982) (noting "misplaced reliance on *Levine* by the *Goldblatt* and *Metcoff* courts"); Comment, *Enforcement of Creditor's Rights*, 1975 U.Ill. L.F. 424, 433–34; Breitsameter, *A Comparison of Supplementary Proceedings and Creditor's Bills*, 70 Ill.B.J. 694, 698 (July 1982) ("appellate decisions were ap-

---

**5.** In Illinois, the writ of execution has been abolished; its function is now performed by a certified copy of the judgment. Ill.Rev.Stat. ch. 110 ¶ 2–1501 (1987). Because the cases cited in this opinion use the term "writ of execution", this Court will also use that term to avoid any confusion.

**6.** It should be noted that the 1974 opinion in *Metcoff* did not cite the earlier 1968 opinion in *Goldblatt*.

parently confused in their application of the *Levine* holding").

The *Metcoff* and *Goldblatt* holdings are directly contradicted by the holding in *Kaiser–Ducett Corp. v. Chicago–Joliet Livestock Marketing Center, Inc.*, 86 Ill.App.3d 216, 41 Ill.Dec. 651, 407 N.E.2d 1149 (3d Dist.1980), a case that applies the *Levine* distinction between the creation and the enforcement of liens. The court in *Kaiser–Ducett* had to determine priorities of claims to a settlement fund. One judgment creditor claimed that it had a priority over other creditors because it had both caused a writ of execution to be issued and delivered to the sheriff of Grundy County and had a citation to discover assets served on the judgment debtor. Unfortunately, the writ of execution should have gone to the sheriff of Kane—not Grundy—County. Because of that mistake, the court held that the creditor had no lien, notwithstanding the issuance of the citation to discover assets. The court held that a "judgment cannot become a lien against personal property unless a writ of execution is delivered to the sheriff to be properly executed. [Citations omitted.] This is so for intangible as well as tangible personal property, even though a citation to discover assets proceeding must be instituted to obtain the intangible personal property of the debtor." 86 Ill.App.3d at 219, 41 Ill.Dec. at 653, 407 N.E.2d at 1151.

The situation is further complicated by *Rochford v. Laser*, 91 Ill.App.3d 769, 46 Ill.Dec. 943, 414 N.E.2d 1096 (1st Dist. 1980), which involved a seat on a stock exchange. *Rochford* certainly does disagree with *Kaiser–Ducett* on at least one point: *Rochford* holds—contrary to *Kaiser–Ducett*—that delivery of a writ of execution does not create a lien on intangible property. Moreover, in *dicta,* the *Rochford* court does say that, "A lien on intangible property may be created ... by instituting proceedings to discover assets", citing *Metcoff* and *Goldblatt.* 91 Ill.App.3d at 775, 46 Ill.Dec. at 949, 414 N.E.2d at 1102. But later the court suggests in other *dicta* that a court order in the citation proceeding is necessary to reach property. 91 Ill.App.3d at 777, 46 Ill.Dec. at 951, 414 N.E.2d at 1104. Thus, it is not clear if the court means that a lien is created immediately by the initiation of citation proceedings or by a later court order. Since the creditor in *Rochford* had not issued a citation at all, the court had no reason to consider the distinction.

In summary, Illinois case law is conflicting and will remain so until the Illinois Supreme Court addresses the issue. But even the cases that support the plaintiff's position here do not point to any language in the statute that creates a lien—a charge against or interest in property—immediately upon the initiation a citation proceeding.

FEDERAL CASE LAW.

The federal courts that have addressed this issue are also in conflict. In *Asher v. United States,* 436 F.Supp. 22 (N.D.Ill. 1976), *aff'd,* 570 F.2d 682 (7th Cir.1978) the issue was whether a judgment lien on a bank account arose when a writ of execution was delivered to the sheriff. If not, a subsequently recorded tax lien would have clearly prevailed over a later citation. The district court, relying on *Levine* said that:

> [J]udgment creditors in Illinois only obtain a lien as to personal property of the debtor upon delivery to the sheriff of a writ of execution.... Under Illinois law, "intangible" personal property (which includes bank accounts) cannot be levied upon by a writ of execution. Rather, in order for the judgment creditor to obtain the debtor's intangible personal property, the creditor must proceed by way of a citation to discover assets ... Not withstanding the need for this supplemental proceeding to satisfy the judgment, the Illinois courts have held that for state law purposes, such as the priorities between judgment liens and security interest, the judgment creditor obtains a lien on the debtor's intangible personal property at the time a writ of execution is delivered to the sheriff, and not at the commencement of the citation to discover assets proceedings.

436 F.Supp. at 25.

The Seventh Circuit, in affirming the district court in *Asher,* said that, "The parties

agree that [a judgment creditor] obtains a lien ... upon intangible personal property by instituting a proceeding to discover assets....", citing *Metcoff* and *Goldblatt.* 570 F.2d at 683. But, since the citation was later than the tax lien, it did not matter whether or not the citation created a lien. Thus, although the court of appeals assumed that a citation creates a lien, it never discussed or explored the issue. Instead, it followed *Levine* to the extent of holding that a lien on intangible property is created by the delivery of a writ of execution. That holding seems to accept the *Levine* dichotomy between the creation and the enforcement of a lien, even if the *Asher* court of appeals opinion does suggest that the first step (the writ of execution) is unnecessary.

Ten years after the Seventh Circuit decided *Asher,* the district court discussed the implications of that opinion. The court in *Barnett v. Stern,* 93 B.R. 962 (Dist.Ct.N.D.Ill.1988) stated that it was not bound by *Asher* for two reasons. First, the court found that the statement in *Asher* that a judicial lien arises from the initiation of citation proceedings is *dicta.* 93 B.R. at 975, f.n. 5. Second, and more important, the court noted that subsequent Illinois cases, *Kaiser–Ducett* and *Rochford,* have taken the opposite approach. *Id.*[7] In *dicta,* the *Barnett* court concludes that "the initiation of a citation proceeding does not create a judicial lien against either tangible or intangible personal property." *Id.*

The court in *General Telephone Co. of Illinois v. Robinson,* 545 F.Supp. 788 (C.D.Ill.1982), in yet more *dicta,* reviewed the authorities and concluded that, "To say the least, this area of law in Illinois is muddled." 545 F.Supp. at 797.

Notwithstanding that muddle, several bankruptcy courts in this district have held that a lien is created upon the initiation of a citation to discover assets. In *In the Matter of Stoner,* 7 B.R. 240 (Bankr.N.D.Ill. 1980), *aff'd,* No. 80 C 6226 (N.D.Ill.1981), a judgment creditor of a chapter 13 debtor moved to have the automatic stay modified. The court held that the judgment creditor obtained a lien on the debtor's property when it initiated a citation to discover assets on the debtor and several banks and ordered that the automatic stay be modified. 7 B.R. at 241. The court held "that the citation to discover assets procedure compels the application of assets discovered to the satisfaction of the judgment by creating a lien upon the intangible property of the defendant." *Id.*

In support of this holding, the *Stoner* court quoted and relied upon the *Levine* court's statement that, "A judgment creditor may attach on either [a chose-in-action or other personalty] under Chapter 73, subsection (2)(e) of the Civil Practice Act." 7 B.R. at 241, quoting *Levine,* 94 Ill.App.2d at 55, 236 N.E.2d 425. The *Stoner* court reads this to mean that "a citation to discover assets creates a lien which attaches to any personal property discovered pursuant to the citation." 7 B.R. at 241. But this is another misreading of *Levine.* Subsection (2)(e) of section 73 (the forerunner of the present section 2–1402(b)(1)) provided that, "when assets ... are discovered, *the court may, by appropriate order ...* [c]ompel any person cited to execute an assignment of any chose in action or a conveyance of title to real or personal property...." Certainly *Levine*'s reference to this subsection cannot have been intended to mean that a lien is created by the mere initiation of a supplementary proceeding, without a court order, since the subsection did no more than authorize a court order.[8]

---

**7.** As noted above, this Court is not certain that *Rochford* takes the opposite approach, but *Kaiser–Ducett* certainly does. Incidently, in *In re Weatherspoon,* 101 B.R. 533 (Bankr.N.D.Ill. 1989), this Court favorably cited the *Barnett* decision on this issue. In *Weatherspoon,* however, this Court did not decide whether the initiation of a citation proceeding creates a lien.

**8.** After relying in *Stoner* upon a statement in *Levine* that said that both a chose-in-action and other forms of personal property could be attached under a citation, the same judge who decided *Stoner* later held, somewhat inconsistently, in *In re Arrow Gen. Contractors of Roselle, Ill.,* 41 B.R. 481, 482 (Bankr.N.D.Ill.1984) that a citation did not create a lien on tangible property.

The judge who decided *Stoner* followed that decision in *In re Johnson,* 24 B.R. 751, 753 (Bankr.N.D.Ill.1982). The facts in *Johnson,* however, support the position that the mere initiation of the citation proceedings does not create a lien. In *Johnson,* the state court, in the citation proceedings, granted the creditor a lien on the debtor's interest in a land trust. 24 B.R. at 752. If a lien had already been created, then there would have been no need for the state court to grant the creditor an additional lien. The holding in *Johnson* merely recognized the validity of the state court's order granting the lien.

The bankruptcy court in *In re Lapiana,* 31 B.R. 738 (Bankr.N.D.Ill.1983) addressed the issue in deciding whether or not a judgment creditor had a priority lien on the beneficial interest in a land trust. The court concluded "the weight of authority and the better reasoned decisions support a finding that the issuance of a citation to discover assets ... creates a lien upon the intangible personal property of the judgment debtor." *Id.* at 742. The court recognized that *Kaiser–Ducett* was in conflict with its holding, but relied on the Seventh Circuit's comment in *Asher* and the prior bankruptcy court's decision in *Stoner,* as well as the ubiquitous *Metcoff* and *Goldblatt* decisions. The court also believed that *Rochford* is in direct conflict with the holding in *Kaiser–Ducett.* But, as we have discussed, the discussion in *Rochford* about citations is *dicta* and it is not clear whether the court meant that the mere initiation of citation proceedings creates a lien (which does conflict with *Kaiser–Ducett*) or that a court order entered in such proceedings may create a lien (which does not). *See, Rochford,* 91 Ill.App.3d at 777, 46 Ill.Dec. at 950–51, 414 N.E.2d at 1103–04.

*Lapiana,* was in turn, relied upon by the bankruptcy court in *In re Foluke,* 38 B.R. 298, 300–01 (Bankr.N.D.Ill.1984). In *Foluke,* the debtor filed an adversary action seeking to recover funds turned over to a creditor pursuant to a state court order in a citation proceeding. The court held that a judicial lien was created at the moment the citation proceeding was initiated, rather than on the date of the turnover order. *Id.* Again, the bankruptcy court noted that the state court decisions were unclear as to when a lien was created. *Foluke* primarily relied on *Lapiana* and *Rochford,* but also the district court case, *General Telephone.* The *Foluke* court stated, "the [*General Telephone*] court in *dicta,* did take the position that a judicial lien is created on intangible personal property upon the initiation of a citation proceeding." *Id.* at 301. *General Telephone,* however, favorably cited a law review article that argued that a court order "should create a lien" but "a lien should not be imposed upon property which has been subjected only to a ... restraining order." The court's own conclusion was only that the issue is "muddled" and should be resolved by the state legislature. *General Telephone,* 545 F.Supp. at 797.

Later bankruptcy decisions only follow the earlier cases—beginning with the ill-advised *Stoner* opinion—in holding that the initiation of supplementary proceedings creates a lien in various types of intangible personal property. *In the Matter of Einoder,* 55 B.R. 319, 324 (Bankr.N.D.Ill.1985); *In re Waner Corp.,* 89 B.R. 751, 755 (Bankr.N.D.Ill.1988); *In re Fowler,* 90 B.R. 375, 377, 380 (Bankr.N.D.Ill.1988).

This Court is not bound by, and cannot agree with, these holdings. It is for Illinois, not this Court, to determine how judgment liens are created. The Illinois General Assembly has never expressly provided that a lien is created by the initiation or service of a supplementary proceeding, notwithstanding the confusion in the case law. This Court can find no language in the present statute that a lien is so created. And the decisions to the contrary are based on authority ultimately traceable to a misreading of *Levine* or on *dicta.*

Moreover, although the case law is in conflict, this Court finds more questions than answers in those cases that support the Bank's position. For example, it appears that the genesis of the notion that a citation creates a lien is the doubt some courts had that a writ of execution could impose a lien on "intangible" property. But this case involves a bank account and

Illinois law does provide a means, garnishment, to create a lien on bank accounts and other choses-in-action. Ill.Rev.Stat. ch. 110 ¶ 12–707(a) (1987). Should bankruptcy courts nevertheless hold (as some have, *e.g., Stoner,* 7 B.R. at 241), that a citation creates a lien on a bank account, thereby rendering the garnishment proceeding largely superfluous, even though no Illinois court has so held? On the other hand, where do we find the authority to limit the reach of citation liens to only intangible property? Section 2–1402 itself does not distinguish among classes of property. So should a citation lien reach, for example, real estate even if no memorandum of judgment is filed? It is unlikely that any court would so hold, but where do we find the authority to draw that line, or any other?

Another set of questions concerns notice. The legislature explicitly provided for means of notice when it created other forms of judgment liens. Recording a memorandum of judgment and delivering a judgment to a sheriff for execution results in a public record that gives constructive notice of the existence of a lien. Garnishment and wage deduction liens are, by statute, the result of service of process on the entities holding the property or wages due the judgment debtor. But where do we find the notice requirements and protection for a citation lien created by the mere issuance of the citation? Here, only the Debtor was served with the citation, not the bank in which he had his account. Perhaps that might be reason enough to hold that there was no lien, but the Debtor (according to the complaint) clearly did violate the restraining provisions of the citation. Why should the citation lien be narrower than those provisions? If it is narrower, how do we, as judges, find its limits?

The problem is not that these questions cannot be answered, but that this Court is not the one who should be answering them. Unable, as this Court is, to find any language in section 2–1402 supporting the finding of a lien on the facts alleged in the Bank's complaint, and in the absence of any clear direction from either Illinois courts or the Seventh Circuit, this Court holds that the initiation and service of a citation to discover assets did not create a lien or other property interest in the Debtor's bank account.

### CONCLUSION

The Court concludes that Count I of the Bank's complaint fails to state a claim upon which relief can be granted and should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) made applicable to these proceedings by Bankruptcy Rule 7012(b).

An appropriate Order will be entered.