**In re T.M. SWEENEY & SONS, LTL SERVICES, INC., d/b/a/ SDS, Inc., Debtor.**

**T.M. SWEENEY & SONS, LTL SERVICES, INC., d/b/a SDS, Inc., Plaintiff,**

v.

**James D. CRAWFORD, Trustee of James D. Crawford Trust, Defendant.**

Bankruptcy No. 89 B 8111.
Adv. No. 89 A 0640.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 21, 1990.

Sheldon L. Solow, Sachnoff & Weaver, Ltd., Chicago, Ill., trustee.

Edward U. Notz, Law Offices of Edward U. Notz, Chicago, Ill., for defendant.

Thomas C. O'Brien, O'Brien & Barbahen, Chicago, Ill., for debtor.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE COMPLAINT OF TRUSTEE TO RECOVER PREFERENCE AND AVOID JUDGMENT LIEN PURSUANT TO SECTIONS 547(b) AND 544(a)

(Amended and Reissued)

JACK B. SCHMETTERER, Bankruptcy Judge.

This cause was tried on Debtor's Adversary Complaint to recover a preferential transfer to and avoid a judgment lien claimed by James D. Crawford ("Crawford"). Upon conversion of Debtor's Chapter 11 proceeding to one under Chapter 7, Trustee Sheldon Solow adopted and prosecuted the Complaint. This action is pursuant to Sections 547(b) and 544(a) of the U.S. Bankruptcy Code, Title 11 U.S.C. (the "Code"). Following trial held August 27, 1990, and having considered the evidence and pleadings, the Court now makes and enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Pursuant to written lease, beginning November 15, 1983, T.M. Sweeney & Sons, LTL Services, Inc. ("Debtor") was the tenant of property commonly known as 12418 South Cicero Avenue, Alsip, Illinois 60658 (the "Lease"). Debtor breached the Lease by failing to pay substantial amounts of rent. Prior to Debtor's default under the Lease, one James D. Crawford became the owner of the leased property and assignee of the former landlord.

2. On or about July 23, 1987, Crawford sued Debtor in the Circuit Court of Cook County, First Municipal District, Case No. 87 M1–154834, seeking payment of the rent arrearage. On March 16, 1988, Debtor and Crawford entered into a stipulation and agreement which resulted in dismissal of that complaint without prejudice.

3. On October 12, 1988, Crawford moved to vacate the dismissal order and sought reinstatement of the suit based upon Debtor's alleged default under the stipulation and agreement. After prove-up of damages on January 5, 1989, the trial judge entered judgment in favor of Crawford and against Debtor in the amount of $76,098.60.

4. Pursuant to Ill.Rev.Stat. ch. 110, ¶ 2–1401, on January 6, 1989 Crawford caused the following Citations to Discover the Assets of Debtor (collectively the "January 6th Citations") to be issued by the Clerk of the Circuit Court of Cook County:

a. Citation against Thomas M. Sweeney, president of Debtor;

b. Citation against Mary Sweeney, secretary of Debtor;

c. Citation against Palos Bank and Trust Company ("Palos Bank").

After their issuance, the January 6th Citations were served by the Sheriff of Cook County. The citations against Thomas and Mary Sweeney were each served on January 13, 1989, whereas the citation against Palos Bank was served on January 17, 1989.

5. On March 21, 1989, Crawford caused the Clerk of the Circuit Court of Cook County to issue a Citation to Discover the Assets of Debtor against Suburban Federal Savings ("Suburban Federal"). That citation was served on March 24, 1989.

6. As of March 31, 1989, Debtor was solvent, as evidenced by a March 31, 1989 balance sheet (the "balance sheet") and testimony by Thomas Sweeney ("Sweeney") who was the president of the Debtor at that time. The balance sheet indicates that as of March 31, 1989, Debtor's assets were greater than its liabilities in the amount of $139,674.

7. The credibility of asset valuations set forth on the balance sheet was established by the testimony of Sweeney during the trial. Sweeney was duly qualified to attest to the information given on the balance sheet. He was involved substantially in the preparation of the document while he was president of Debtor, shared in bookkeeping duties, handled the actual buying and selling of inventory, and supervised all aspects of the business operation.

8. Although Sweeney's testimony revealed that certain deductions should be taken from the $139,674 equity shown on the balance sheet, the evidence nonetheless established that Debtor maintained a positive net worth as of March 31, 1989.

9. Because Debtor defaulted under the Lease, Debtor never received back its $37,500 lease deposit. That asset therefore had no value, and the reported value of it should be subtracted from the $139,674 equity balance. Similarly, because Debt-

or's lease receivable and approximately 3% to 5% of Debtor's account receivables were never collected, an additional $21,000 for the lease and at most $2,107.15 for the receivables should also be deducted from the assets. However, Sweeney's testimony established that all other valuations on the balance sheet, including that regarding Debtor's inventory, were accurate. Therefore, even after the above deductions are taken, as of March 31, 1989 Debtor still maintained a positive net worth of over $79,000. Sweeney further testified that as of March 31, 1989, Debtor was in fact paying its debts as they became due. Debtor was clearly solvent at that time. The evidence did not show any change in solvency over the next eleven days, and the Court finds that Debtor was solvent on April 11, 1989.

10. On April 11, 1989, Crawford moved for turnover of funds from Palos Bank to Crawford that had been discovered through the citation against that Bank. The State Court ordered the requested turnover. The turnover order resulted in payment of $5,155.05 from Palos Bank to Crawford. The check in that amount was received by Crawford on or about April 13, 1989 and cleared on or about April 20, 1989. Crawford applied $3,278.65 of that payment as a principal payment on its judgment and the remainder to Illinois statutory interest on that judgment, thereby leaving a balance of $72,819.95 remaining due on the January 5, 1989 judgment.

11. On April 14, 1989, Crawford caused the following Citations to Discover Assets (the "April 14th Citations") to be issued by the Clerk of the Circuit Court of Cook County:

a. Citation and Alias Citation against Thomas E. Grotta and Thomas E. Grotta, P.C.;

b. Citation against Canfields Company and American Juice, Inc., a division of Canfields Company;

c. Citation against Cooper Industries and Kirasch Company;

d. Citation against Spiegel, Inc.;

e. Citation against Edgewood Bank;

f. Citation against Heritage Bremen Bank;

g. Citation against Richmond Bank.

The citations against Canfields and American Juice, Spiegel, Edgewood Bank, and Heritage Bremen Bank, were served on April 27, April 19, April 25, and April 28 of 1989, respectively.

12. On May 15, 1989, Debtor filed its voluntary petition under Chapter 11 of the Code. The case was later converted to a Chapter 7 proceeding on December 8, 1989. The current Trustee was appointed on December 21, 1989.

13. On July 14, 1989, Debtor filed this complaint seeking to recover as a preference the $5,155.05 transfer from Palos Bank to Crawford, and to avoid the citation liens which Crawford claims resulted from the issuance and service of the remaining citations. The Trustee adopted Debtor's Complaint.

## CONCLUSIONS OF LAW

### A. *Jurisdiction*

1. United States district courts have subject matter jurisdiction over cases under Title 11 and proceedings arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. § 1334(a), (b). Each district court is authorized to refer such proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a). In the Northern District of Illinois, such a referral has been made pursuant to Local Rule 2.33.

2. In a core proceeding that arises in or under Title 11, a bankruptcy judge is empowered to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(b)(1). A proceeding to recover a preference is a core proceeding under 28 U.S.C. § 157(b)(2)(F). Similarly, a proceeding to determine the priority of competing liens is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

### *Count I*

3. Section 547 of the Bankruptcy Code establishes the requirements for avoiding preferential transfers. Title 11 U.S.C. § 547. Under subsection (b), a trustee may avoid any transfer of the debtor that was made (1) to or for the benefit of a creditor; (2) on account of an antecedent debt; (3) while the debtor was insolvent; (4) on or within 90 days before the filing of the petition (a year when insiders are transferees); (5) where such transfer allowed the creditor to receive a greater percentage of the debtor's estate than it would have received had the transfer not taken place and had the debtor's assets been liquidated and distributed in a Chapter 7 case.

4. The first, second and fifth elements of § 547(b) are not contested. The two elements required under § 547 that are in dispute in this case are: (1) whether payment of $5,1055.05 from Palos Bank to Crawford was the "transfer" of Debtor's property within 90 days before the filing of Debtor's Chapter 11 filing, or whether a citation lien effected transfer before the 90 days; and, (2) whether Debtor was insolvent at the time of the transfer from Palos to Crawford, whenever it took place.

5. A "transfer" within the meaning of the Code is defined as:

every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption. 11 U.S.C. § 101(50).

6. This definition of "transfer" has been held to include any judicial proceeding that fixes a lien upon property of the debtor. *In re Foluke*, 38 B.R. 298, 300 (Bankr.N.D.Ill.1984). This Court therefore must determine whether a judicial lien attached to Debtor's property in favor of Crawford, and if so when that occurred; or when a transfer otherwise took place. Because bankruptcy courts look to state law in determining property rights, the question of whether and when Crawford's lien arose is resolved by reference to Illinois law. *See In re Skelly*, 38 B.R. 1000, 1001 (Bankr.D.Del.1984).

7. Debtor filed its Chapter 11 petition on May 15, 1989. The 90-day "reachback" period under Section 547 therefore began on February 14, 1989. Crawford

contends that under Illinois law there was a "transfer" within the meaning of Section 547 when the January 6th Citation was issued against Palos Bank on January 6, 1989, or at the very least when it was served upon that Bank on January 17, 1989. His argument is that a judicial lien attached to the amount on the deposit in the Bank on one of those dates. Trustee, on the other hand, argues that no transfer occurred until the state court issued a turnover order against Palos Bank on April 11, 1989, within the 90–day period.

8. The Illinois statute governing citation proceedings, Ill.Rev.Stat. ch. 110, ¶ 2–1402, does not specify whether or not a lien arises upon service of citation summons following judgment. That legislative silence has resulted into an area of state law correctly described as being "muddled." *General Telephone Co. of Ill. v. Robinson*, 545 F.Supp. 788, 797 (C.D.Ill. 1982). However, the weight of authority in Illinois holds that a lien arises on intangible property by service of citation summons. *Mid–West Natl. Bank v. Metcoff*, 23 Ill. App.3d 607, 319 N.E.2d 336 (Ill.App.Ct. 1974); *Bank of Broadway v. Goldblatt*, 103 Ill.App.2d 243, 243 N.E.2d 501 (Ill.App. Ct.1968); *General Telephone Co. of Illinois v. Robinson*, 545 F.Supp. 788 (C.D.Ill. 1982); *Asher v. United States*, 570 F.2d 682 (7th Cir.1978).

9. The bankruptcy judges in this district, including this Court, have almost uniformly ruled that the clear weight of Illinois authority finds service of citation summons to create a lien while it also compels the discovered assets to be used toward satisfaction of the judgment. *In re Waner*, 89 B.R. 751, 755 (Bankr.N.D.Ill.1988) (Schmetterer, J.); *In re Fowler*, 90 B.R. 375, 377 (Bankr.N.D.Ill.1988) (Coar, J.); *In re Einoder*, 55 B.R. 319, 325 (Bankr.N.D. Ill.1985) (Ginsberg, J.); *In re Gus Hormovitis and George Karahalios*, 57 B.R. 471, 475 (Bankr.N.D.Ill.1985) (Schwartz, J.); *In re Foluke*, 38 B.R. 298, 300 (Bankr.N.D.Ill. 1984) (Hertz, J.); *In re Lapiana*, 31 B.R. 738, 742 (Bankr.N.D.Ill.1983) (Fisher, J.), *aff'd on other grounds*, 909 F.2d 221 (7th Cir.1990).

10. The one exception to the above line of cases is *In re Jaffe*, 111 B.R. 701, 704 (Bankr.N.D.Ill.1990) (Barliant, J.). In *Jaffe*, Judge Barliant found that service of a citation summons does not create a lien on a debtor's bank account until a turnover order is entered by the state court requiring transfer of the discovered assets. This Court cannot agree with the conclusion in *Jaffe*.

11. The *Jaffe* decision, scholarly though it is, reaches a conclusion contrary to the clear weight of Illinois authority which all other bankruptcy courts in this district have followed. In deciding that a lien is not created in a citation proceeding until a turnover order is entered, the *Jaffe* court was able to cite only one case in support of its finding. *See Jaffe*, 111 B.R. at 706, citing *Kaiser–Ducett Corp. v. Chicago–Joliet Livestock Marketing Center, Inc.*, 86 Ill.App.3d 216, 41 Ill.Dec. 651, 407 N.E.2d 1149 (3rd Dist.Ill.1980). The *Jaffe* decision also undertook an analysis which criticized established state law precedent. However, it was the *Jaffe* court itself which observed that it is for the Illinois legislature, and not the bankruptcy court, to determine how judgment liens are created. Although the reasoning of Illinois courts that we follow may well be questioned, this Court feels bound to follow the weight of state court authority.

12. Thus, this Court abides by the reasoning of prior bankruptcy decisions which have followed Illinois court authority, in finding that the service of the Citation summons against Palos Bank created at that time a lien upon Debtor's bank account. However, for purposes of § 547 the time of "transfer" of an interest is fixed by § 547(e)(2). Perfection of the citation lien on the Palos Bank account did not take place within 10 days after the lien arose by service of citation summons. That summons was served on January 17, 1989. Perfection of the lien took place on April 11, 1989 when the turnover order was entered. Therefore under § 547(e)(2)(B) the "transfer" took place on the latter date, less than 90 days before the Debtor filed its Petition for Relief.

13. Count I nonetheless fails pursuant to Section 547(b)(3) since the evidence has shown that Debtor was solvent at the time of "transfer" which took place on April 11, 1989, upon entry of the turnover order. While insolvency is presumed during the 90–day period preceding filing of the Petition for Relief, 11 U.S.C. § 547(f), that presumption was clearly rebutted by the evidence.

## Count II

14. Count II of the Complaint seeks to avoid all judgment liens which Crawford claims attached to Debtor's assets as a result of the service of Citation summons against Suburban Federal, those parties served with the April 14th Citations, and on others served with citations. In doing so, Trustee invokes his avoidance powers pursuant to Section 544(a) of the Code, Title 11 U.S.C.

15. The purpose of Section 544(a) is to enable the trustee to marshal or increase the potential assets of the estate. Collier's On Bankruptcy, ¶ 544.01 (15th ed.). Section 544(a)(1) in particular accomplishes this by affording a Chapter 7 trustee the status of and power to avoid transfers voidable by a judicial lien creditor. Thus, the trustee's powers are those which state law would allow to a hypothetical creditor of the debtor who, as of the commencement of the case, had completed the legal or equitable processes for perfection of a lien upon property available for the satisfaction of his claim against the debtor. *Id.* It follows that a trustee's interest as a lien creditor is superior only to those security interests which are unperfected as of the filing of the bankruptcy petition. Therefore, the issue before the Court is whether Crawford's citation liens that arose upon service of citation summonses were "perfected" or "unperfected" at the time Debtor's petition was filed.

16. Ill.Rev.Stat. ch. 110, ¶ 2–1402 provides that:

"when assets or income of the judgment debtor ... are discovered, the court may, by appropriate order or judgment ... (3) [c]ompel any person cited, other than the judgment debtor, to deliver up any assets so discovered, to be applied in satisfaction of the judgment...." Ill.Rev.Stat. ch. 110, ¶ 2–1402(b)(3).

The statute clearly does not require an actual delivery of the discovered assets until the turnover order is entered. Absent entry of a turnover order, the discovered assets will not necessarily go to the judgment creditor who issued the citation. If another creditor wins a turnover order first, the assets may go to it.

17. Service of a Citation summons is designed to aid the judgment creditor in discovering a debtor's assets and apply them in satisfaction of the judgment. *In re Fowler*, 90 B.R. 375, 380 (Bankr.N.D. Ill.1988) (Coar, J.). As previously discussed, service of citation summons creates a lien upon discovered property. The lien, however, does not constitute a final order or an order for the payment of money. *Id.* It is not until a turnover order is entered that a citation lien creditor's rights to the discovered property become fixed and inalienable as against the lien rights of other competing creditors.

18. Ill.Rev.Stat. ch. 110A, ¶ 277(f) provides that a citation proceeding continues

until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation.... Ill.Rev.Stat. ch. 110A, ¶ 277(f).

Thus, in *Fowler* Judge Coar found that while a citation proceeding did create a lien on debtor's intangible property, the lien was a temporary remedy which terminated upon termination of the citation proceeding. *Id.* at 379, citing *King v. Ionization Internatl., Inc.*, 825 F.2d 1180, 1188 (7th Cir.1987) ("[t]he reason for the six-month limitation is to force creditors to move promptly to collect their judgments, so that property does not remain encumbered by liens indefinitely....").

19. Until a turnover order compelling payment of discovered assets is entered, a lien is not "perfected" in that the creditor's

rights to the discovered assets remain subject to termination, either by the lapse of the six-month period or by the entry of a turnover order in favor of another competing creditor. It is not until a turnover order is entered that a debtor loses all interest in his property. *In re Dean*, 80 B.R. 932, 934 (Bankr.C.D.Ill.1987).

20. Because no turnover orders were entered with regard to the Citation against Suburban Federal, the April 14th Citations, and other parties served with citations other than Palos Bank, Crawford failed to "perfect" his lien except for Palos Bank; that is he failed to fix his rights in Debtor's discovered assets as to parties other than Palos Bank. Thus, Trustee's interest as a hypothetical lien creditor under Section 544(a) is superior to Crawford's interests which remained unperfected as of the filing of the petition. Trustee's strong-arm powers prevail under Count II, except for moneys turned over by Palos Bank under turnover order.

### Conclusion

21. Accordingly, Palos' transfer of $5,155.05 of Debtor's assets to Crawford did not constitute a voidable preference. Although under 11 U.S.C. § 547(e)(2) the transfer took place within the 90–day reachback period, it took place at a time when Debtor was solvent. Trustee fails on Count I; by separate order judgment will enter accordingly.

22. However, Trustee prevails on Count II. Crawford's Citation liens arising from the Citation against Suburban Federal and parties served with the April 14th Citations, as well as other parties other than Palos Bank that were served with citations were not "perfected" at the time Debtor's petition was filed. Therefore his liens from those Citations are voided due to Trustee's status as a hypothetical perfected lien creditor. By separate order judgment will enter for Trustee on Count II, except as it applies to the moneys formerly held by Palos Bank.