**WATER TECHNOLOGIES CORPORA-TION, a Delaware corporation, Water Pollution Control Systems, Inc., a Texas corporation, and Kansas State University Research Foundation, a Kansas nonprofit corporation, Plaintiffs,**

v.

**CALCO, LTD. and William J. Gartner, Defendants.**

No. 82 C 4330.

United States District Court, N.D. Illinois, E.D.

Nov. 21, 1990.

Brad A. Berish, Adelman, Gettleman & Merens, Ltd., Chicago, Ill., for plaintiffs.

James J. Stamos, Stamos & Trucco, Chicago, Ill., for C & R Distribution, Inc.

James B. Cavenagh, Parker F. McMahon, Jr., Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

On October 25, 1990, Magistrate Edward A. Bobrick filed and served upon the parties his Report and Recommendation in the present matter. Intervenor C & R Distributing, Inc. ("C & R") moved to vacate a portion of the "citation to discover assets" served by plaintiff Water Technologies Corp. ("Water Tech") upon National Environmental Testing, Inc. ("NET"). Additionally, C & R asked the court to deny the relief requested by Water Tech in its motion for a "turnover order" with respect to NET. Magistrate Bobrick's findings are as follows: 1) service of a citation to discover assets does not create a judicial lien on a security interest owned by a third party; 2) "[a]s such, the court need take no action with respect to the citation"; and 3) Water Tech's turnover motion should be denied.

After a careful reading of Magistrate Bobrick's Report and Recommendation, selected cases cited with approval in the Report (particularly *In re Jaffe*, 111 B.R. 701 (Bankr.N.D.Ill.1990), and *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill.2d 307, 127 Ill. Dec. 952, 533 N.E.2d 1080 (1989)), and Water Tech's objections thereto, this court hereby adopts the Report and Recommendation.[1] Accordingly, we deny Water Tech's turnover order motion. Applying the analytical framework set forth in *In re Jaffe*, Water Tech's service of a citation on NET does not create a lien on the compensation due under the consulting agreement at the root of this slice of the dispute. C & R does have a perfected superior interest in the NET assets.

Water Tech's objections to the Report are overruled. Its primary contention—that a citation does create a lien—is founded on case law and statutory interpretation debunked in *In re Jaffe*, as Magistrate Bobrick points out. Moreover, the mere fact that Water Tech correctly followed various mechanical citation and turnover order procedures does not mean that it is entitled to an outcome uncontemplated by those procedures.

For these reasons, we adopt Magistrate Bobrick's Report and Recommendation. It is so ordered.

## REPORT AND RECOMMENDATION

EDWARD A. BOBRICK, United States Magistrate.

Before the court is the motion of intervenor C & R Distributing, Inc. ("C & R") to vacate a portion of the citation to discover assets served by the plaintiff Water Technologies Corp. ("Water Tech"), upon National Environmental Testing, Inc. ("NET").

The citation at issue prohibits NET from transferring or paying monies which are due one William Gartner, a defendant in this case, under a consulting agreement. As part of its motion, C & R asks the court to deny the relief requested by Water Tech in its motion for a turnover order with respect to NET. C & R, the post-judgment intervenor, in this case, is an Arizona corporation. It claims to have a perfected superior interest in the NET assets. C & R seeks relief from the actions of Water Tech which, by reason of its citation to discovery assets process, claims to have created a superior interest in NET assets as a "judicial lien holder." The factual situation in this case is tortuously complicated and cumbersome—the legal contest, while at first blush appearing initially difficult, is by virtue of recent cases easily resolvable. In essence, the issue before the court is whether a citation to discover assets creates a judicial lien on a security interest owned by a third party.

## BACKGROUND OF CASE

In July 1982, Water Tech filed a patent infringement lawsuit in the Northern District of Illinois against Calco, Ltd. ("Calco"), an Illinois corporation, and William Gartner ("Gartner"), a resident of Arizona.

---

1. C & R's agreed motion for enlargement of time to respond to Water Tech's objections is thus moot.

On October 23, 1986, the District Court entered judgment against Calco and Gartner, jointly and severally, in the amount of $520,000 in actual damages, and $520,000 in punitive damages. This judgment was subsequently appealed to the Seventh Circuit Court of Appeals. The Appellate Court partially reversed the judgment to the extent that it held Calco and Gartner liable for unfair competition. The Appellate Court vacated the damage award based on lost profits and remanded the case for a redetermination of damages. In all other respects, the judgment was affirmed.

In January 1989, pursuant to the Appellate Court's rulings, the District Court rendered a modified judgment to reflect an award to Water Tech of $417,976 in damages plus $115,141 in prejudgment interest. In March 1989, Water Tech was also awarded $184,537 in attorneys' fees and $66,751 in prejudgment interest. The aggregate judgment award was $784,405.

On February 24, 1987, Calco filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. In March 1989, Water Tech reached a settlement with Calco in the Chapter 11 Case, whereby Calco paid Water Tech $245,000 to be applied toward the modified judgment. This left $539,405 (plus post judgment interest) outstanding.

### The Post Judgment Events Begin To Get Complicated

Between October and December 1989, Water Tech, now Calco's judgment creditor, served a total of ten Citations to Discover Assets of Gartner; these were issued pursuant to Illinois Revised Statutes, Chapter 110, ¶ 2–1402, as made applicable and incorporated through Rule 69 of the Federal Rule of Civil Procedure. The citation served upon NET revealed Gartner as the recipient of compensation due under a consulting agreement; this 1986 agreement was among Aqualab Incorporated ("Aqualab"), an Illinois corporation, NET, a Dela-

ware corporation, and Gartner. The consulting agreement provided that $625,000 was to be paid to Gartner in ten semi-annual installments from May 1, 1986 until March 31, 1991.

Upon learning of the consulting agreement, through its citation process, Water Tech filed a motion for a turnover order in February 1990. Water Tech requested the entry of an order directing all payment due Gartner under the consulting agreement to be paid directly to Water Tech until the judgment balance was satisfied. However, due to a series of assignments concerning the proceeds of the consulting agreement, it was unclear who was the rightful recipient of the funds coming from the consulting agreement.[1]

### The Procession of Assignments

The confusion as to the real owner in interest of the proceeds of the consulting agreement first reared its head on November 10, 1986 when Gartner unilaterally assigned and transferred all of his rights and interests under the consulting agreement to ULX, Inc., ("ULX"), an Illinois corporation, the sole shareholders of which were Gartner and his immediate family. Aqualab and NET executed a consent to the ULX assignment on December 30, 1986.

On December 16, 1988, without mention of the ULX assignment, Gartner again assigned all of his rights and interests under the consulting agreement (which by virtue of the ULX assignment, amounted to nothing) to the Harris Trust Bank of Arizona ("Harris Trust"). This assignment was made in conjunction with a loan to Reflex, Inc. ("Reflex"), an Arizona corporation of which Gartner was the president. Aqualab and NET accepted this second assignment on December 19, 1988. While all this was going on, Water Tech had served its citation to discover assets on NET.

In December 1989, Gartner again involved the proceeds from the consulting

---

1. And here is where the going gets tough in understanding the sequence of events concerning Gartner reachable continuing financial in-  terest in the proceeds of the consulting agreement.

agreement in another transaction.[2] Great Western Combine Investments Limited Partnership ("Great Western"), an Arizona limited partnership held 100% by Gartner and his immediate family, Reflex and C & R entered a Stock Purchase Agreement. Under this agreement, C & R (our intervenor who now seeks relief from Water Techs' citation and requested turnover order) agreed to purchase 100,000 shares of common stock of Reflex, to provide Reflex a $120,000 line of credit, and to purchase Reflex's Harris Trust loan. On December 11, 1989, as part of this transaction, Gartner entered a Pledge and Security Agreement whereby he agreed to pledge all of his rights under the consulting agreement to secure Reflex's obligations to C & R under the loans. The financing statement, executed by Gartner covering the consulting agreement, was filed with the Arizona Secretary of State's Office on December 14, 1989.

On January 24, 1990, C & R purchased Reflex's Promissory Note (payable to the Harris Trust in the principal amount of $247,000). In conjunction with the purchase of the Promissory Note, Harris Trust entered an assignment agreement with C & R whereby Harris Trust assigned its rights under the December 16, 1988 Gartner/Harris Trust assignment to C & R. Thereafter, Aqualab and NET consented to this assignment.

When this transaction was complete, C & R learned of Gartner's 1986 assignment to ULX. ULX then executed a Guaranty to C & R, dated as of January 1, 1990, whereby ULX agreed to guarantee the indebtedness and obligations of Reflex, Gartner and Great Western to C & R. On the same day, as security for the guaranty, ULX and C & R entered a security agreement whereby ULX granted and assigned to C & R a security interest in ULX's rights, title, and interest (including proceeds) in the ubiquitous consulting agreement. The financing statement, executed by ULX and covering the consulting agreement, was filed with the Arizona Secretary of State's Office on

March 1, 1990, perfecting C & R's security interest under Arizona law. Not surprisingly, Gartner's many transactions concerning the proceeds of the consulting agreement precipitated uncertainty as to whom those proceeds really belonged. After Water Tech moved for a turnover order with respect to the proceeds, C & R sought to intervene in the litigation, fully believing it had secured a superior interest to all.

On March 29, 1990, C & R filed a motion to intervene pursuant to Fed.R.Civ.P. 24, alleging that it had a prior and superior interest in the money due under the consulting agreement because of its prior perfected security interest. C & R claimed that it was entitled to intervention of right as provided in Rule 24(a), because it had an interest relating to the property which is the subject of the immediate action, and that Water Tech's requested remedy would impair or impede C & R's ability to protect that interest.

## ARGUMENTS

In its motion to vacate the citation order, C & R argues that Gartner, through his multiple assignments, had lost all retained interest in monies payable under the consulting agreement and that this divestment came long before the January 1989 initial judgment. More specifically, though, C & R argues it had become a secured creditor for such proceeds when, on December 14, 1989, the financing statement for the pledge and security agreement executed by Gartner, C & R and others was filed with the Arizona Secretary of State. The financial statements specifically described the consulting agreement, and thus under Arizona Rev.Stat. § 47–9303, C & R then enjoyed a perfected security interest. Additionally, C & R argues that it obtained another valid security interest in the proceeds of the consulting agreement from ULX, when ULX pledged the proceeds of the consulting agreement in which it ostensibly had an interest to C & R to cover an

---

**2.** If multiple assignments of a financial interest were a crime, surely Gartner would have been publicly horsewhipped in the city square.

indebtedness concerning Reflex, Gartner and Great Western. C & R maintained it perfected the second security interest by filing the ULX pledge with the Arizona Secretary of State. C & R maintains that this secured interest is superior to any interest that Water Tech claims by reason of the citation served on NET (who is the payer of the consulting agreement), notwithstanding the fact that said citation predated the filing by C & R of its security documents with the Arizona Secretary of State.

To reach this conclusion, C & R maintains that in determining security interests under a citation to discover assets one must look to the law of the state of the debtor and apply that law in determining interests. Thus, according to C & R, under Arizona law, a filing with the Arizona Secretary of State was necessary to perfect the security interest. C & R made such a filing; Water Tech did not. Next, C & R argues that under any circumstances in fact, no lien rights, in any event, are created through this citation process.

Water Tech, on the other hand, argues that it became a judicial lien creditor when it discovered the judgment debtors assets pursuant to its citation proceedings and since that date predates C & R's filing of its documents with the Arizona Secretary of State, its rights were superior. To reach this conclusion Water Tech argues that following Federal Rule 69(a) of the Federal Rules of Civil Procedure the law of the state in which the district court is located wherein the supplemental proceedings in aid of the judgment were initiated should be followed. To this end Water Tech maintains Illinois case law holds that the filing of the citation creates a status of a judicial lien creditor making Water Tech's interest superior to all other interests, in particular C & R's.

## DISCUSSION

### I. *Applicable Law*

■ In ultimately disposing of this dispute, it is not entirely essential to resolve the alleged conflict of laws concerning whether Arizona or Illinois law determines to the legal perimeters of the citation process. However, for the sake of being complete, we find that Illinois law would determine the breadth of those legal rights one would gain in summoning the citation process under Rule 69(a) of the Fed.R.Civ.P., which Water Tech pursued in this court. Rule 69(a), provides in applicable part:

> The procedure on execution, in proceedings supplementary to and in aid of judgment, and in the proceedings on and in aid of execution shall be *in accordance with the practice and procedure of the state in which the district court is held,* existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. (emphasis added).

We also find that the Uniform Commercial Code § 9–103(3) provides, in applicable part:

> "the law (including the choice of laws rules) of the jurisdiction in which the debtor is located governs the perfection and effect of perfection or non-perfection of the security interest." Ill.Rev.Stat. ch. 26, ¶ 9–103(3)(b).

■ Authority for easy resolution of the conflicts issue between State Statute and Federal Rules is found in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), which requires inquiry as to whether, when fairly construed, the scope of the Federal Rule is "sufficiently broad" to cause a "direct collision" with the state law or implicitly, to "control the issue." If so, the Federal Rule has priority. See also *Burlington Railroad Co. v. Woods,* 480 U.S. 1, 107 S.Ct. 967, 969, 94 L.Ed.2d 1 (1987). Since Rule 69(a) and UCC § 9–103(3)(b) do conflict, Rule 69(a) has priority. Rule 69(a) stipulates the law of the place where the district court is held will govern supplementary proceedings. Thus, Illinois law will be applied.

### II. *The Superior Interest in the Consulting Agreement Proceeds*

■ With the understanding that Illinois Law applies, Water Tech then claims a superior interest in the proceeds due under

the consulting agreement by operation of Illinois law which, according to Water Tech, makes the individual who initiated the citation process a judicial lien creditor of those tangible and intangible assets discovered. As Water Tech puts it:

"It is well settled in Illinois and in the Seventh Circuit that a lien is created upon intangible personal property upon the service of a citation. *Asher v. U.S.,* 570 F.2d 682, (7th Cir.1978), *Rochford v. Laser* [91 Ill.App.3d 769], 46 Ill.Dec. 94 [943], 949 [414 N.E.2d 1096, 1102] (1st Dist.1980), *In re Waner Corp.,* 89 B.R. 751, 755 (Bankr.N.D.Ill.1988), *In re Fowler,* 90 B.R. 375, 377 (Bankr.N.D.Ill. 1988), *In re Foluke,* 38 B.R. 298, 301 (Bankr.N.D.Ill.1984), *In re Hormovitis,* 57 B.R. 471, 475 (Bankr.N.D.Ill.1985). Therefore, plaintiffs obtained lien creditor status against the consulting agreement on November 27, 1989 when the NET citation was served upon NET." (Page 6) (Plaintiff's Reply Brief to C & R's Response to Motion for Turnover).

C & R, of course, maintains no such special lien status is created by the citation status, and that its secured lien status, which Water Tech acknowledges (Plaintiff's Reply Brief, at 6), makes its claim superior despite the fact that Water Tech obtained its alleged lien status prior to the C & R's perfection of its interest. We find that in Illinois and in the Seventh Circuit, it is anything but well-settled that a lien is created upon service of a citation. In fact, the better and more current view is that the citation cannot accomplish such a legal feat.

### A. Confusion in the Courts

To say the least, Illinois law has in fact been vacillating as to whether initiation and service of a citation to discover assets creates a judicial lien. Much of the confusion stems from the Seventh Circuit ruling in *Asher v. United States,* 570 F.2d 682, 683 (7th Cir.1978), in which the court, in pure *dicta,* pronounced that a judicial lien arises from the initiation of citation proceedings. In the wake of this decision, the various Illinois Appellate Courts differed in their rulings on this issue. In *In re Marriage of Rochford,* 91 Ill.App.3d 769, 46 Ill.Dec. 943, 949, 414 N.E.2d 1096, 1102 (1st Dist.1980), the appellate court for the First District said that a lien may be created by instituting proceedings to discover assets. Conversely, in *Kaiser–Ducett Corp. v. Chicago–Joliet Livestock,* 86 Ill.App.3d 216, 41 Ill.Dec. 651, 653, 407 N.E.2d 1149, 1151 (3d Dist.1980), the appellate court for the Third District said that a judgment cannot become a lien against personal property unless a writ of execution is delivered to the sheriff.

Turning to the decisions of our Federal District Courts, we likewise find confusion on this issue. In *Barnett v. Stern,* 93 B.R. 962, 975 n. 3 (N.D.Ill.1988), the court concluded "under Illinois law the initiation of citation proceedings alone does not create a judicial lien on tangible or intangible personal property." [3] Further confusion is provided by cases of *In re Weatherspoon,* 101 B.R. 533 (Bankr.N.D.Ill.1989), which was decided on June 22, 1989, and *Thomas Steel Corp. v. Bethlehem Rebar Industries, Inc.,* 101 B.R. 16, 19 BCD 942 (Bankr. N.D.Ill.1989), which was decided the very next day, June 23, 1989. *Weatherspoon* held that "[t]he district court in *Barnett v. Stern* ... convincingly argues that the initiation of citation proceedings does not create a lien." The next day, *Thomas Steel* quotes *In the Matter of Stoner Investments, Inc.,* 7 B.R. 240, 241 (Bankr.N.D.Ill. 1980), that

[T]he purpose of the citation proceeding is to aid a judgment creditor in discover-

---

**3.** The Barnett ruling was made notwithstanding other earlier courts ruling to the effect that while initiation or citation proceedings alone is not sufficient, both issuance and service of the citation is sufficient to create a lien. See *In re Hormovitis,* 57 B.R. 471, 475 (Bankr.N.D.Ill. 1985) ("In order for a lien to attach ... the creditor must issue and service ... a citation to discover assets."); *In re Foluke,* 38 B.R. 298 (Bankr.N.D.Ill.1984) ("[A] judicial lien was created the moment citation proceeding was initiated."); *In re Lapiana,* 31 B.R. 738 (Bankr.N.D. Ill.1983) ("[A] judicial lien is created upon the initiation of citation proceedings."); *In re Einoder,* 55 B.R. 319 (Bankr.N.D.Ill.1985) ("[T]he initiation of citation proceeding creates a judicial lien in at least intangible personal property").

ing the debtor's property and applying it in satisfaction of a judgment by *creating a lien* on the intangible personal property of the judgment debtor. (emphasis added).

Additionally, five months earlier, the court in *In re Coan*, 96 B.R. 828, 830, 20 CBC2d 1198 (Bankr.N.D.Ill.1989) held "[I]ssuance and service of a citation to discover assets creates a lien on general intangible property of a judgment debtor." The *Coan* court did not comment on the 1988 *Barnett* decision.

### B. A Definitive Answer to the Dilemma

In a most scholarly, in-depth review of this issue, Judge Ronald Barliant of the United States Bankruptcy Court, Northern District of Illinois, on March 15, 1990 in the case of *In re Jaffe*, comprehensively and carefully articulated the conclusion that initiation and service of a citation does not create a judicial lien. 111 B.R. 701. We are persuaded by this decision and subscribe to the same view.[4]

The court in *Jaffe* first examined the relevant statutory law, Ill.Rev.Stat. ch. 110 ¶ 2–1402, but found no language to support the idea that issuance of a citation creates a lien. 111 B.R. at 704. Turning to case law, the court attributed the significant conflict to those early cases involving creditors' means of enforcing liens to misinterpretation of the holding in *Levine v. Pascal*, 94 Ill.App.2d 43, 236 N.E.2d 425 (1st Dist.1968).

*Levine* involved a dispute between the holder of an unperfected security interest in the beneficial interest of a land trust and a judgment creditor. Since, under U.C.C. § 9–301(1)(b), only a judgment creditor who

attains the status of lien creditor before the competing security interest is perfected has priority over the security interest, the issue was whether and when the judgment creditor attained the status of lien creditor. The plaintiff became a judgment creditor on February 16, 1965. A Writ of Execution was issued February 18, 1965. Citation proceedings were initiated on March 26, 1965. The court resolved the issue of the plaintiff's status by distinguishing between the acquisition and the enforcement of a lien. *See In re Jaffe*, 111 B.R. at 705. The *Levine* court said:

> Clearly, plaintiff became a lien creditor as defined in § 9–301(3) of the Commercial Code when the writ of execution was placed in the hands of the sheriff. See Chap. 77, § 9, Ill.Rev.Stat.1965, and *Century Pipe and Supply Co. v. Empire Factors*, 19 Ill.App.2d 165, at 169, 153 N.E.2d 298 [(1958)]. While it may be doubtful whether the plaintiff could effectively enforce his lien by means of the writ of execution, there is no doubt he could do so through citation proceedings.

94 Ill.App.2d at 55, 236 N.E.2d at 430. The Court in *Jaffe* astutely points out that all subsequent cases took the above cited language of *Levine* wrongly to mean that the initiation of citation proceedings created a lien, despite the plain language that it is the writ that creates the lien and that the citation is used to enforce the writ. 111 B.R. at 705.

*Jaffe* traces the conflicts to *Mid–West National Bank of Lake Forest v. Metcoff*, 23 Ill.App.3d 607, 319 N.E.2d 336 (2d Dist. 1974) and *Bank of Broadway v. Goldblatt*, 103 Ill.App.2d 243, 243 N.E.2d 501 (1st Dist.1968), which both relied on their misin-

---

**4.** This court is impressed with *Jaffe* not only because of its persuasive legal analysis, but also because it gives us a most sensible result to the issues posed in the bipolar view of the breadth of the citation. Generally, sequestration of property under the flag of ownership interest is accompanied by a writ offering some modicum of safeguards to one holding the asset from the one who seeks to obtain it. These safeguards are identified in writs of attachment, writs of execution and like writs. We find no such safeguards in the citation process which basically is purely a discovery tool under the rules; indeed, in Rule 69 the citation process is referred to in

terms of discovery. With respect to execution, Rule 69 specifically details a method by which execution will be accomplished, thereby distinguishing it from discovery. To say that an individual would obtain a financial interest through a discovery process under the terms of the citation would give great breadth, and a novel right, to those engaged in discovery. It seems to be plain common sense that the purpose of discovery would not encompass blanketing someone with a cloak of ownership as to those things discovered by reason of the discovery effort; common sense further dictates that transfer of ownership should require something more.

terpretations of *Levine* for the proposition that initiation of citation proceedings creates a lien. Both courts cited the same passage from *Levine:*

> In *Levine v. Pascal* [citation omitted], it was held that a creditor who proceeds by a citation to discover assets is a lien creditor as defined in § 9–301(3) of the Uniform Commercial Code and that such creditor has superior right to the beneficial interest in a land trust over a creditor who was assigned the beneficial interest in the trust as security for a loan but who failed to file a financing statement covering that interest.

*Metcoff,* 23 Ill.App.3d at 611, 319 N.E.2d at 340; *Goldblatt,* 103 Ill.App.2d at 247, 243 N.E.2d at 503. However, neither of these decisions acknowledged the holding in *Levine* that the lien was acquired by the writ of execution, even if it could only be enforced through citation proceedings. *See Jaffe,* 111 B.R. at 705.

The *Jaffe* court concluded that it was not bound by any of holdings saying that a lien is created by the initiation of citation proceedings, as all of these decisions are based either on authority traceable to a misreading of *Levine,* or on *dicta. Jaffe,* 111 B.R. at 708. The court convincingly argued that it is for the legislature to determine how judgment liens are created. *See also General Telephone Co. of Illinois v. Robinson,* 545 F.Supp. 788 (C.D.Ill.1982) (arguing that citation proceedings should give rise to a lien on intangible personal property, but that such liens should be legislatively designated, not judicially created). The *Jaffe* court points out that "The Illinois General Assembly has never expressly provided that a lien is created upon the initiation or service of a supplementary proceeding ... [and that] ... no language ... [could be found] ... in the present statute that a lien is so created." *Id.* at 708. Because the *Jaffe* court was "[u]nable ... to find ... any clear direction from either Illinois Court or the Seventh Circuit," it held that the initiation of a citation to discover assets did not create a lien or other property interest. *Id.*

This court, then, follows the reasoning of the *Jaffe* court, which is the most convincing authority on the matter of whether a citation creates a judicial lienholder. We conclude that C & R had a superior perfected security interest to that of Water Tech in the proceeds of the Gartner consulting agreement. We find that Water Tech's service of a citation on NET does not create a lien on the compensation due under the consulting agreement; it merely served to discover, not attach, that asset. As such, the court need take no action with respect to the citation. We hereby recommend, instead, that the motion for turnover order of plaintiff Water Tech be DENIED.

DATE: October 25, 1990.