Steven KARAKAS, Plaintiff,

v.

Bernard McKEOWN, Frederick Siegele, and John Doe, Accountant, Bookkeeper, Defendants.

No. 90–CV–73345–DT.

United States District Court, E.D. Michigan, S.D.

Feb. 14, 1992.

Willis P. Jones, Jr., Keith J. Watkins, Jones & Bahret, Toledo, Ohio, for plaintiff.

Robert M. Kluchin, Michael J. Sreenan, Keck, Mahin & Cate, Chicago, Ill., for defendant Frederick Siegele.

Henry Lee, George Gregory, Lee & Gregory, Birmingham, Mich., for defendant Bernard McKeown.

## OPINION

GILMORE, District Judge.

This matter is before the Court on the motion of the Plaintiff Steven Karakas seeking dismissal of counterclaims on the basis that such claims would either be properly or more efficiently adjudicated in a pending state action. In other words, the Plaintiff asks this Court to abstain from exercising jurisdiction over the counterclaims in favor of parallel claims made in a pending state action. The court declines Plaintiff's invitation to abstain.

### I

In November of 1990, Barbara Vaughan, Lee Carr, and the Demray Brothers, a Michigan partnership, filed a stockholder's derivative suit in Wayne County Circuit

Court against Bernard and May McKeown; Frederick and Mildred Siegele; BFS Associates (BFS), a Michigan partnership, and Secodyne, Inc. (Secodyne), a Michigan corporation. Secodyne was a manufacturer of chemicals used in processing of waste water. Both Vaughan and Carr were each 18½ percent owners of Secodyne, while Frederick Siegele (Siegele), Bernard McKeown (McKeown), and Steven Karakas (Karakas) each owned 20⅓ percent of Secodyne. The remaining 2 percent of Secodyne is alleged to be owned by the Demray Brothers. In an attempt to geographically expand Secodyne's customer base, and because Vaughan and Carr elected not to contribute to the Secodyne expansion venture, Siegele, McKeown and Karakas created BFS for the sole purpose of leasing equipment to Secodyne. The creation of BFS thus enabled Secodyne to have its requisite capital for expansion and allow only McKeown, Siegele and Karakas to realize a return on their contribution. McKeown, Siegele and Karakas each owned 33⅓ percent of the BFS partnership.

Shortly after the initiation of this state suit, Steven Karakas filed a diversity suit in this court on November 14, 1990 against McKeown and Siegle seeking (1) an accounting of the assets of BFS Associates, (2) damages as a result of breach of fiduciary duty; and (3) damages for breach of the BFS partnership agreement. Subsequent to Karakas' initiation of this federal action, McKeown and Siegle filed a third-party action against Karakas in the pending state action seeking damages as a result of Karakas' alleged interference with contractual relations between Secodyne and BFS; breach of fiduciary duty as a director of Secodyne, and violation of Section 489 of the Michigan Business Corporations Act as a director of Secodyne.

On June 18, 1991, McKeown and Siegele sought further legal recourse against Karakas, filing seven counterclaims in this court: (1) a request for declaratory relief to determine the terms of the BFS partnership agreement, and claims for (2) indemnification for several leases entered into by BFS; (3) Karakas' breach of fiduciary duty as a BFS partner; (4) damages resulting from Karakas' interference with a number of BFS's lease arrangements; (5) damages for Karakas' interference with contractual relations between BFS and Secodyne; (6) Karakas' breach of fiduciary duty as a director of Secodyne, and (7) conversion of BFS property. In comparison with the state third party actions, only federal counterclaims (5) and (6) are identical. Pursuant to McKeown and Siegele's filing of the counterclaims, Karakas moves to dismiss the counterclaims on two grounds: abstention in favor or judicial economy, and comity for Michigan's compulsory joinder rule.

## II. ABSTENTION

Plaintiff first argues that, when parallel claims are being litigated concurrently in a federal and state court, the federal court, acting within its discretion, should decline to entertain the controversy. Plaintiff relies principally on *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), holding that a federal court is under no compulsion to exercise jurisdiction when the questions raised can be more efficiently resolved in the pending state court action. Plaintiff asserts that the counterclaims made by McKeown and Siegele closely resemble those made in the state third party action and could be more efficiently resolved in the state court. Thus, he claims this Court should decline jurisdiction and permit the state court to proceed on the issues raised in the counter-claims, leaving only Karakas' diversity suit to the federal forum.

In the alternative, the Plaintiff argues that this Court should follow the "wise judicial administration" doctrine of abstention put forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), suggesting abstention in favor of judicial economy.

It appears Plaintiff reads *Brillhart* as not of the genre of cases associated with the abstention doctrine. This Court cannot accept Plaintiff's categorization of *Brillhart*. Yet, even if the *Brillhart* opinion

does not mention the word "abstention," it cannot be seriously suggested that *Brillhart* was not an abstention case. Regardless of how the Plaintiff labels the relief sought, this Court views such relief as one seeking abstention, and the question before us is whether abstention applies.

█ Abstention doctrine permits federal courts to decline jurisdiction in order to prevent the needless friction between federal and state governments. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959). Traditionally, there are three general types of abstention, none of which applies in this case.[1] First, *Pullman* abstention occurs when the disposition of an unsettled question of state law would obviate the need to reach a federal constitutional question. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). This abstention is appropriate in a case when a challenged state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching the federal constitutional question. *Harris County Commissioner's Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1977). *Pullman* does not apply here because there is no challenge to a state statute. *Babbitt v. United Farm Workers*, 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979).

█ Second, there is the *Burford* doctrine of abstention under which a federal court abstains in order to avoid deciding an issue that would interfere with a state's attempt to establish or maintain a coherent state policy on matters of important state concern. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The *Burford* Court listed two factors to justify abstention: (1) the presence of a complex state regulatory scheme that would be disrupted by Federal review, and (2) the existence of a state-created forum with specialized competence in the particular area. *Burford, supra,* at 327, 332–33, 63 S.Ct. at 1104, 1106–07. *See also Ada-Cascade Watch Co. v. Cascade Resource Recovery,* 720 F.2d 897, 903 (6th Cir.1983). Here, there is no issue of state policy involved to invoke *Burford.*

█ Third, the *Younger* doctrine of abstention allows a federal court to abstain from hearing a case where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining a pending state proceeding. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Our Sixth Circuit has stated that, when a state is not a party and the underlying judicial proceeding is not a criminal action, *Younger* abstention is inappropriate absent extraordinary circumstances. *Traughber v. Beauchane,* 760 F.2d 673 (6th Cir.1985). *See, e.g., Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). There are no extraordinary circumstances in the present case which would trigger the *Younger* form of abstention.

█ Rather, the procedural posture of the instant case is most similar to a fourth and more general form of abstention referred to as the *"Colorado River"* Doctrine. Although this case does not come within the scope of the traditional abstention categories, *Colorado River* addressed the federal-state relations that govern concurrent jurisdiction of either federal courts or state and federal courts, and considers "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). The Court in *Colorado River* held these considerations of "wise judicial administration" created a narrow exception to the virtually unflagging obligation of the fed-

---

1. The Supreme Court, lower courts, and commentators have disagreed on the number of abstention doctrines. *See generally,* Redish, *Abstention, Separation of Powers, and the Limits of the Judicial Function,* 94 Yale L.J. 71 (1984). This Court simply discusses the most recognized forms in outlining a brief discussion of the abstention doctrine and disavows any attempt to provide a definitive exposition of the subject.

eral courts to exercise the jurisdiction given them. *Crawley v. Hamilton County Commissioners*, 744 F.2d 28, 30 (6th Cir. 1984) (citations omitted). The *Colorado River* Court was careful in pointing out that, in considering whether abstention is appropriate, "[o]nly the clearest of justification will warrant dismissal." *Id.* A federal court should consider four factors when determining whether the interests of wise judicial administration outweigh the duty to exercise jurisdiction. Specifically, the Court should consider: (1) the problems that occur when a state and federal court assume jurisdiction over the same *res;* (2) the relative inconvenience of the federal forum; (3) the need to avoid piecemeal litigation, and (4) the order in which the state and federal proceedings were filed. *Id.* 424 U.S. at 818–19, 96 S.Ct. at 1246–47.

The holding of *Colorado River* was revisited and clarified in *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Affirming the holding of *Colorado River*, the *Moses Cone* Court once again emphasized abstention to avoid duplicative litigation only in exceptional circumstances. The mere duplicativeness of a parallel state and federal proceeding, and the inefficiency inherent in parallel litigation, is insufficient to justify abstention, and the balance of the four factors weighs heavily in favor of retaining federal jurisdiction. *Id.* 460 U.S. at 16–17, 103 S.Ct. at 937–38. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7 (1st Cir.1990). Finally, the *Moses Cone* Court added a fifth factor to be considered in deciding whether abstention is appropriate: whether a federal question is present. *Id.* 460 U.S. at 23, 103 S.Ct. at 941.[2]

■ Analyzing Plaintiff's motion to dismiss, in light of *Colorado River* and its progeny, the Court simply cannot identify any exceptional circumstance for withdrawing its obligatory power over the parties involved in the counterclaims. In consider-

ing the four factors, clearly neither this court nor the state court exert jurisdiction of the same *res.* Second, whether the federal forum is more inconvenient to the party seeking abstention surely cannot be asserted. Both the Federal courthouse and the State courthouse where the state proceeding is concurrently pending are located within a few blocks of each other; thus, the parties, witnesses, and evidence should have no problems appearing in this court, if they are readily able to do so in the state court. Third, the Plaintiff argues that keeping the counterclaims in this court would assure piecemeal litigation between the pending state action and this suit. Albeit there would be a fracturing of this case in the two forums, it must be noted that the Plaintiff brought this curse upon himself and cannot complain without coming to terms with the problem he has created. Rather than filing his suit in the state court where the pending action of Vaughn and Carr was initiated, Karakas elected to sue in the federal court, thus opening the door to whatever counterclaims he may be subjected to pursuant to our rules of civil procedure. By dismissing the counterclaims, this Court would still be required to entertain the suit initiated by the Plaintiff. By entertaining only half of the controversy, if abstention were decided upon, such decision would not lessen the threat of piecemeal litigation but rather only reduce the quantity of duplicative issues. As laudable as the objective of conserving any quanta of our judicial resources may be, the mere diminution of the number of common issues found in both forums does not equate with a total eradication of the threat of piecemeal litigation.

Lastly, as to the order in which the forums obtained jurisdiction in this matter, this forum obtained jurisdiction over the parties before the state third-party actions. This Court's jurisdiction over the parties was created when Karakas filed his suit in this Court. The filing of the federal counterclaims did not create any additional pow-

---

**2.** A number of other courts have incorporated additional factors, such as the presence or absence of concurrent jurisdiction and the vexatious or contrived nature of the federal claim. *See, e.g., Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir.1988) (listing 10 factors).

er over these parties since such power preexisted by way of the Karakas' filing the parent suit.[3] Having found little or no weight assigned to the elements necessary to determine if an exceptional circumstance exists for the purpose of rebutting the heavy presumption against abstention in cases of parallel claims, this Court is constrained to conclude that abstention is proper as to the Defendant's counterclaims.

## III. COMITY

■ Plaintiff's second argument proposes that this court dismiss defendant's counterclaims in deference to Michigan's compulsory joinder rule.[4] Plaintiff argues that Defendants McKeown and Siegele were bound by compulsory joinder in their third-party state court proceeding to name all claims against Karakas, including those brought in this Court via McKeown's and Siegele's counterclaims. Defendant responds by arguing that his counterclaims were made pursuant to the Fed.R.Civ.P. 13(a) governing compulsory counterclaims, and that all counterclaims were made in response to Plaintiff's initiation of this case.[5]

The logic of Defendant's argument is unpersuasive because, as Defendant quite correctly points out, it was Karakas who initiated the dispute among the BFS partners. Defendants Siegele and McKeown were well aware of the nature of the issues and claims to be decided upon at the time they filed both their third-party state action against Karakas and their federal counterclaims almost seven months later. Defendant was certainly bound by the compulsory joinder rules when he filed his state third-party action after Karakas filed in the federal forum. However, to hold that this Court be bound by the Michigan Rules of Procedure would cause greater injury to the corpus of law seeking uniformity of procedure in the federal courts.

Clearly, what Plaintiff is asking this Court to do is to decide between applying our own Rules of Procedure and those of Michigan, particularly its compulsory joinder rule and its policies, at the expense of denying a federal defendant the application of a federal procedural rule in a federal forum.

■ It is well settled that a federal court presiding over a diversity case operates under federal rules of procedure. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); 5 Wright and Miller, *Federal Practice and Procedure:* Civil § 1024. Furthermore, in a diversity suit with a conflict between a state procedural rule and a

---

**3.** Examining whether the instant case can provide any weight to the fifth factor provided in *Moses Cone,* this inquiry must conclude in the negative as there is no question of federal law presented. All claims raised in the counterclaim are state-based issues, as well as are those claims made in the parent claim. As such, the *Moses Cone* factor cannot be considered in the balancing against this Court's presumption of retaining jurisdiction.

**4.** Michigan's compulsory joinder rule, MCR 2.203(A) provides:
(1) In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of the third parties over whom the court cannot acquire jurisdiction. (2) Failure to object in a pleading, by motion, or at a pretrial conference to improper joinder of claims or failure to join claims required to be joined constitutes a waiver of the

joinder rules, and the judgement shall only merge the claims actually litigated. This rule does not affect collateral estoppel or the prohibition against relitigation of a claim under a different theory.

**5.** Fed.R.Civ.P. 13 provides in pertinent part:
(a) Compulsory counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its jurisdiction the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim under this Rule 13.

federal rule, the federal rule prevails. *Saraniero v. Safeway, Inc.*, 540 F.Supp. 749 (D.C.Kan.1982); *Water Technologies Corp. v. Calco, Ltd.*, 132 F.R.D. 670 (N.D.Ill. 1990). As such, this Court cannot ignore the overwhelming policy concerns present when having to choose between state and federal procedural rules in a diversity action, and must conclude that the federal rule regarding compulsory counterclaims is controlling. Without anything more than the bare assertion of comity by the Plaintiff, such abandonment of the rules by which this court operates cannot be considered.[6]

Plaintiff's motion to dismiss all counterclaims asserted against him is denied.

SO ORDERED.

---

**6.** It is worth noting that, although this Court cannot allow Michigan's compulsory joinder rule to serve as a basis for dismissing a counterclaim validly asserted within the framework of our compulsory counterclaim rule, the doctrines of res judicata and collateral estoppel that serve as the foundation for the compulsory joinder and counterclaims rules will be vigorously applied in this court should the state action come to completion before the case *sub judice.*